PEOPLE v GAHAN

Docket No. 105515. Argued October 8, 1997 (Calendar No. 8). Decided
     December 23, 1997.

     James E. Gahan was charged in the Kent Circuit Court with four
          counts of embezzlement involving the sale of vehicles on consign-
          ment. Each count related to a different alleged victim who was
          paid less than the selling price. After the preliminary examination,
          the defendant was bound over on the counts involving Barry Bald-
          win and Kevin Bryde. The court, Dennis C. Kolenda, J., granted the
          defendant's motion to sever the cases and ordered that separate tri-
          als be conducted on each count. Thereafter, the defendant was
          convicted by a jury of one count of embezzlement for selling Barry
          Baldwin's Wilderness trailer and keeping $1,100. The court sen-
          tenced the defendant to a term of two to ten years incarceration,
          and, as a condition of parole, ordered that he pay $25,000 in restitu-
          tion to compensate other victims. The Court of Appeals, GRIFFIN
          and A. L. GARBRECHT, JJ. (SMOLENSKI, P.J., concurring in part and dis-
          senting in part), vacated the order of restitution in an unpublished
          opinion per curiam, noting that the amount involved in the Baldwin
          case was only $1,100. It concluded that restitution may be imposed
          only with respect to a loss caused by the offense for which the
          defendant was tried and convicted, and remanded the case (Docket
          No. 172159). The people appeal.

     In a unanimous opinion by Justice TAYLOR, the Supreme Court
     held:

     The Crime Victim's Rights Act provides a sentencing court with
     authority to order a defendant to pay restitution to compensate all
     victims defrauded by a criminal course of conduct, even though the
     specific criminal acts committed against some of the victims were
     not the basis of the defendant's conviction.

     1. MCL 780.766(2); MSA 28.1287(766)(2) authorizes a sentencing
     court to order a criminal defendant to pay restitution to all crime
     victims, even if specific losses were not the factual predicate for
     the conviction. The phrase "course of conduct" should be given a
     broad construction to encompass the restitution order at issue.
     Under the statute, the trial court's restitution order was proper; the

court had the statutory authority to order restitution to compensate any victim of the defendant's illegal scheme.

2. The Crime Victim's Rights Act affords criminal defendants adequate due process. It provides for an evidentiary hearing when the amount of restitution is contested, and further provides that the prosecution must bear the burden of establishing the proper amount. In this case, the defendant did not request an evidentiary hearing regarding the amount of restitution due. He cannot now argue that he was denied due process.

Reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *David M. LaGrand*, Assistant Prosecuting Attorney, for the people.

*Arthur H. Landau* for the defendant.

Amicus Curiae:

*Sheila N. Robertson* for Criminal Defense Attorneys of Michigan.

TAYLOR, J.

I

In this appeal we are asked to determine whether a sentencing court may order a defendant to pay restitution to compensate all the victims who were defrauded by his criminal course of conduct, even though the specific criminal acts committed against some of these victims were not the basis of the defendant's conviction. We hold that the Crime Victim's Rights Act, MCL 780.766; MSA 28.1287(766), provides a sentencing court with the authority to order such restitution.

II

In early 1992, Barry Baldwin decided to sell his Wilderness trailer motor home. Baldwin entered into a consignment sales agreement with defendant. Pursuant to the agreement, Baldwin's vehicle was displayed on defendant's high-visibility sales lot, Grandville Service and Repossessions, with the intent that defendant's sales force would sell the vehicle. They agreed that defendant would receive four percent of the sales price as a commission. At the onset, Baldwin told defendant that he would sell the trailer for no less than $7,000. Subsequently, Baldwin agreed to sell the motor home for $5,900 after one of defendant's salesmen, allegedly acting as an intermediary between a prospective buyer and Baldwin, told him the trailer would sell at that price. After the trailer was sold, defendant gave Baldwin a check for $5,900. Defendant purportedly waived his four-percent commission because the selling price was well below what Baldwin originally anticipated.

Later that year, Baldwin discovered that defendant had actually sold the trailer for $7,000. Baldwin went to defendant and demanded payment of the $1,100 difference between the actual sales price and the amount that defendant led Baldwin to believe the vehicle sold for.[1] Rather than pay Baldwin, defendant ultimately told him to contact defendant's attorney.

The evidence presented at trial demonstrated that defendant had contemporaneously perpetrated this same scheme on other individuals who sold their vehicles on consignment with him. Defendant told

[1] Baldwin told defendant he was still willing to pay the four-percent commission.

John Ausema that his car had sold for $11,300 when in fact it had been sold for $11,900. Defendant told Burt Irish that his van sold for $5,700 when in fact it sold for $6,500. Defendant paid Joseph Casares $2,000 after his car was sold, implying that it had sold for that amount plus the four-percent commission. However, Casares' car sold for approximately $3,300.[2] Defendant told Kevin Bryde that his automobile sold for $1,700 when in fact it had sold for $2,500. Defendant told Melinda Stuart that her car sold for $2,300 when in fact it sold for $2,600.

Responding to allegations raised by various individuals, the Grandville Police Department and the Michigan Department of State, Bureau of Automotive Regulations, investigated defendant's consignment sales activities. Defendant was subsequently charged with four counts of embezzlement. Each count related to a different alleged victim, i.e., James Kolberg, Barry Baldwin, Kevin Bryde, and William DeBoer. After the preliminary examination, defendant was bound over on the counts involving Baldwin and Bryde. However, pursuant to defendant's motion to sever, the trial court ordered that separate trials be conducted on each count. Trial was first conducted on the count involving Baldwin. The jury found defendant guilty.[3]

After defendant was convicted, a presentence investigation report was prepared. MCL 771.14; MSA 28.1144. It indicated that the Grandville Police

---

[2] The purchaser testified that she paid either $3,400 or $3,600.

[3] Defendant subsequently pleaded guilty to the count involving Bryde. For this conviction defendant was sentenced to five-years probation, $1,000 in fines and full restitution. The transcript of this proceeding was not included in the record on appeal. Consequently, we are unable to discern the scope of restitution (if any) agreed to by defendant at that proceeding.

Department believed defendant's scheme began sometime in early 1992 and that the department continued to receive calls from additional victims who were similarly swindled by defendant. The presentence report quoted a Bureau of Automotive Regulations investigator as saying that "the State originally had 48 counts against the defendant involving transactions like the Baldwins, that went on for over a year." The probation officer indicated that he had personally spoken with sixteen individuals who claimed that defendant had told them that their vehicles were sold for less than the actual sales price. On the basis of his accounting of known victims, the probation officer recommended the court immediately order defendant to pay $28,260 in restitution and that the court reserve the right to assess additional restitution in the future.

Defendant filed an objection to the presentence report, denying that there were forty-eight victims similarly situated to Baldwin. Defendant also requested "that a specific breakdown be provided to him regarding the approximate $28,000 in restitution since the Baldwin matter involved approximately $1,100 as the claimed difference." At sentencing, defendant raised a generalized objection to the uncertainty regarding the number of victims the recommended restitution amount was intended to compensate.[4]

---

[4] In this regard, defense counsel stated:

Secondly, your Honor, there is a threshold issue here concerning exactly what Mr. Gahan is being sentenced for. It's an important issue whether or not he's being sentenced for 48 customers, for 5 or 6 customers, in terms of the 404B evidence that was admitted at trial, or for Mr. Baldwin.

The court sentenced defendant to a term of two to ten years incarceration. As a condition of parole, the court ordered that defendant pay $25,000 in restitution. This amount reflected the amount recommended in the presentence report less an adjustment correcting an inaccuracy brought to the court's attention by one of defendant's other victims.[5] The court indicated that the Parole Board should determine what each victim should receive, that it should seek additional restitution if warranted, and that the failure to pay more than what was owed would not be a violation of defendant's parole.

On appeal, the Court of Appeals vacated the order of restitution. Noting that Baldwin had only been cheated out of $1,100, the appellate court correctly found that the restitution order was designed to compensate other victims in addition to Baldwin. Concluding that restitution may only be imposed with respect to a loss caused by the very offense for which defendant was tried and convicted, the Court of Appeals vacated the restitution order and remanded the case to the trial court. Unpublished opinion per curiam, issued January 16, 1996 (Docket No. 172159). The prosecution appealed to this Court, and we granted leave to appeal. 454 Mich 873 (1997). We

---

In any one of these circumstances, whether he is being sentenced for Mr. Baldwin $1,100, whether he is being sentenced for 48 unlisted customers with a restitution amount of $28,260, or something in between.

[5] Defendant had apparently sold the vehicle of one Mr. Foster, but had entirely failed to forward the proceeds of the sale to him. The presentence report relied on a sales price of $15,000 in determining the appropriate amount of restitution. The court's comments indicate that Foster's attorney clarified that the vehicle sold for $11,500. In response to this information, the court reduced the recommended restitution to $25,000.

now reverse and reinstate the trial court's order of restitution.

### III

#### A. SCOPE OF RESTITUTION UNDER
#### THE CRIME VICTIM'S RIGHTS ACT

The prosecutor argues that the Court of Appeals erred in vacating the sentencing court's restitution order. He argues that the plain language of the Crime Victim's Rights Act, specifically MCL 780.766(2); MSA 28.1287(766)(2), authorizes the sentencing court to order criminal defendants to pay restitution to all victims, even if those specific losses were not the factual predicate for the conviction. We agree.

It is the primary rule of statutory construction that the plain language of the statute be enforced. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992), criticized on other grounds in *Gross v General Motors Corp*, 448 Mich 147, 165; 528 NW2d 707 (1995), *City of Lansing v Lansing Twp*, 356 Mich 641, 648-650; 97 NW2d 804 (1959). MCL 780.766(2); MSA 28.1287(766)(2), in effect at the time of defendant's sentencing, provided:

> The court, when sentencing a defendant convicted of a crime, may[6] order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make restitution to any victim[7] of the defendant's course of conduct which gives rise to the conviction . . . .

---

[6] We note that pursuant to 1993 PA 341, subsection 16(2), the Legislature amended the statute to require, rather than permit, that restitution be ordered.

[7] MCL 780.766(1); MSA 28.1287(766)(1) defines "victim," for the purposes of this statute as "an individual who suffers direct or threatened

As is apparent, the statute clearly states restitution may be ordered with respect to "any" victim.

The remaining question is whether "course of conduct" should be given a broad or narrow construction. The history of that phrase as it came to be used in the Crime Victim's Rights Act demonstrates that it should be given a broad construction to encompass the restitution order at issue here.[8]

Initially, this phrase appeared in cases addressing the proper scope of restitution ordered as a condition of probation pursuant to MCL 771.3(2); MSA 28.1133(2). That statute provided:[9] "As a condition of probation, the court may require the probationer to do 1 or more of the following: . . . Pay restitution to the victim . . . ." Cases arose under this statute where trial courts ordered criminal defendants to pay restitution that exceeded the losses attributable to the specific charges that resulted in the defendant's conviction. As in the present case, these defendants

_____

physical, financial, or emotional harm as a result of the commission of a crime."

[8] In *People v Grant*, 455 Mich 221, 231-232, n 11; 565 NW2d 389 (1997), we observed similarities between MCL 780.766(2); MSA 28.1287(766)(2) and its federal counterpart, 18 USC 3663, with respect to the trial courts' discretion to order restitution. Although the two share some similarities, the federal courts have interpreted the federal statute narrowly, holding, for example, that "a compensable injury must be caused by an act intended to aid the commission of the offense of conviction or in some other way be part of the same scheme as the offense of conviction." *United States v Miller*, 900 F2d 919, 923 (CA 6, 1990). See also *United States v Henoud*, 81 F3d 484 (CA 4, 1996); *United States v Silkowski*, 32 F3d 682 (CA 2, 1994). The federal statute states that the court "may order . . . that the defendant make restitution to *any victim of such offense* . . . ." 18 USC 3663(a)(1)(A) (emphasis added). We conclude that the absence of the phrase "course of conduct" and the use of the phrase "such offense" distinguishes the intent of the federal statute from the more broadly worded Michigan statute.

[9] The statute has subsequently been amended in ways that do not affect this discussion.

claimed the restitution orders were improper. Our courts determined that such restitution orders were appropriate because principles of justice required that the defendant "pay back the entire amount obtained by his course of criminal conduct." *People v Seda-Ruiz*, 87 Mich App 100, 103; 273 NW2d 602 (1978). See also *People v Nawrocki*, 8 Mich App 225; 154 NW2d 45 (1967); *People v Gallagher*, 55 Mich App 613; 223 NW2d 92 (1974); *People v Pettit*, 88 Mich App 203; 276 NW2d 878 (1979).

With this historical background, and aware of the construction of MCL 771.3; MSA 28.1133 the Legislature enacted the Crime Victim's Rights Act[10] and incorporated the term "course of conduct" in defining the scope of a proper restitution order. This phrase having acquired a unique meaning at common law, the meaning is carried over to the interpretation of the subsequent statute dealing with the same subject matter absent any direction to the contrary by the Legislature. *People v Reeves*, 448 Mich 1, 8; 528 NW2d 160 (1995); *Nation v W D E Electric Co*, 454 Mich 489, 494-495; 563 NW2d 233 (1997). Because there was no indication from the Legislature that the common-law meaning was not being incorporated, this phrase "course of conduct" should be given the broad meaning the courts had earlier stated. Thus, the defendant should compensate for all the losses attributable to the illegal scheme that culminated in his conviction, even though some of the losses were not the factual foundation of the charge that resulted in conviction.

---

[10] Pursuant to 1985 PA 87 and 89, the Legislature enacted the Crime Victim's Rights Act and also amended the Code of Criminal Procedure to authorize restitution in conjunction with a term of imprisonment. These statutes closely follow one another.

Under the Crime Victim's Rights Act the trial court's restitution order was proper. Defendant repeatedly told his customers that their cars or trailers sold for less than the true amount of the sale, and kept the difference for himself. This repeated scheme to defraud his customers in the same or similar manner falls within the broad meaning of "course of conduct" contained in the statute. Pursuant to MCL 780.766(2); MSA 28.1287(766)(2), the court had the statutory authority to order restitution to compensate any victim of defendant's illegal scheme.[11]

### B. DUE PROCESS

Having concluded that the Legislature authorized restitution to any victim of the defendant's criminal course of conduct, we next address defendant's argument that this statutory scheme violates the Fifth and Fourteenth Amendments of the United States Constitution.[12] Defendant argues that the restitution order was constitutionally repugnant because the crimes by which the other victims were defrauded were not proven beyond a reasonable doubt. Thus, according to defendant, ordering him to compensate these other victims deprived him of due process of law. We disagree.

---

[11] Although totally dissimilar crimes committed at different times may not satisfy the statutory "course of conduct" requirement, such facts are not presented in this case. Consequently, we need not attempt to define the exact parameters of that term on this occasion. In this case, defendant's embezzlement scheme clearly falls within the confines of the term as it has developed in the case law preceding our decision today.

[12] US Const, Am V provides in part that no person shall "be deprived of life, liberty, or property, without due process of law . . . ." US Const, Am XIV provides in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." Although defendant does not argue it, we presume that he also relies on Const 1963, art 1, § 17.

Initially, we note that defendant and the Court of Appeals relied on language in *People v Becker*, 349 Mich 476; 84 NW2d 833 (1957), and cases citing that opinion, as support for the conclusion that the restitution order must be vacated. In *Becker*, this Court stated that restitution

> can be imposed only as to loss caused by the very offense for which defendant was tried and convicted. As to the other crimes or offenses there has been no fixing of [defendant's] liability therefor in a constitutional sense. [*Id.* at 486.]

While this passage facially supports defendant's argument, the Court of Appeals reliance on this language is flawed. First, the Court of Appeals failed to appreciate that at the time *Becker* was decided eight justices sat on this Court[13] and only three justices concurred with the reasoning of the opinion. The remaining four justices concurred in the result only. "Plurality decisions in which no majority of the justices participating agree as to the reasoning are not an authoritative interpretation binding on this Court under the doctrine of stare decisis." *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976). Thus, *Becker* is not controlling precedent, and the panel below erred in treating it as such.[14]

Additionally, *Becker* does not support the conclusion that the restitution order at issue here is uncon-

---

[13] Chief Justice DETHMERS and Justices SHARPE, SMITH, EDWARDS, VOELKER, H. F. KELLY, CARR, and BLACK.

[14] This error was also committed by the panels in *People v Goodchild*, 145 Mich App 266; 377 NW2d 318 (1985), and *People v Blaney*, 139 Mich App 694; 363 NW2d 13 (1984), both cases disapproved on other grounds in *People v Music*, 428 Mich 356; 408 NW2d 795 (1987).

stitutional because the opinion specifically distinguishes its facts from facts similar to those presented. In *Becker*, the defendant negligently struck two pedestrians with his automobile and unlawfully left the scene of the accident. The defendant pleaded guilty of leaving the scene of an accident. As a term of his probation, the sentencing court ordered him to pay $1,244 in restitution to the victims to compensate them for their medical expenses. This Court stated:

> The problem of the validity of requiring "restitution" as a condition of probation in a criminal case of this type presents serious constitutional problems. (We say "of this type" because in those cases where the criminal defendant has, for instance, been found guilty of embezzlement from his employer, and is required to restore the embezzled funds as a condition of probation, there is no serious question that the requirement imposed comes within the meaning of the term "restitution" as employed in the statute. But such is not our problem.) [*Id.* at 479.]

Thus, it is plain that the panel in *Becker* did not mean to apply its discussion to a case such as ours in which the defendant has embezzled funds in the course of his business.

Realizing that *Becker* is not dispositive, we turn to the Crime Victim's Rights Act to determine if it affords criminal defendants adequate process so that there is no constitutional violation. It does because a sentencing scheme that requires proof by only a preponderance of the evidence passes constitutional muster.[15] This statute affords that level of process.

---

[15] The United States Supreme Court recently clarified that a sentencing court may consider other conduct, not proven beyond a reasonable doubt, but established by a preponderance of the evidence, in determining the defendant's sentence. *United States v Watts*, 519 US 148, 156-157; 117 S Ct

MCL 780.767(4); MSA 28.1287(767)(4) provides "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." That subsection also requires that the prosecution must establish the appropriate amount of restitution by a preponderance of the evidence. Thus, the statute affords defendant an evidentiary hearing when the amount of restitution is contested and further provides that the prosecution bears the burden of establishing the proper amount.

Although defendant did not receive such an evidentiary hearing, that does not give rise to error in this case because, as the Court of Appeals correctly noted below, at sentencing defendant did not request an evidentiary hearing regarding the amount of restitution that was properly due.[16] This was a waiver of his opportunity for an evidentiary hearing and he cannot now argue that he was denied due process.[17]

---

633; 136 L Ed 2d 554 (1997). The use of the preponderance of the evidence standard at sentencing generally complies with due process.

[16] Rather, an attorney representing a defendant in a civil matter relating to one of the several victims defrauded by the defendant, informed the court that the restitution amount should be reduced to reflect the amount truly owed to that person. In response, the trial court reduced the restitution amount recommended in the presentence report to reflect this correction. Other than this, defendant did not offer any evidence or specific argument to demonstrate that the amount of restitution recommended in the presentence report was inaccurate. Although defense counsel made some general comments questioning the number of victims, "[o]nly an actual dispute, properly raised at the sentencing hearing in respect to the type or amount of restitution, triggers the need to resolve the dispute by a preponderance of the evidence." *Grant*, n 8 *supra* at 243.

[17] It is incumbent on the defendant to make a proper objection and request an evidentiary hearing. Absent such objection, the court is not required to order, sua sponte, an evidentiary proceeding to determine the proper amount of restitution due. *Grant*, n 8 *supra* at 243. See also *People v Hart*, 211 Mich App 703, 705; 536 NW2d 605 (1995). Instead, the court is entitled to rely on the amount recommended in the presentence investigation report "which is presumed to be accurate unless the defendant effec-

We note that the Crime Victim's Rights Act contains additional procedural safeguards that ensure that defendants are afforded due process. MCL 780.766(14); MSA 28.1287(766)(14) precludes a defendant from being incarcerated for failure to pay the restitution ordered, absent the court or the Parole Board determining that the defendant has the resources to pay, but has not made a good-faith effort to do so. MCL 780.766(12); MSA 28.1287(766)(12) authorizes the court to modify the method of payment if the court determines that payment under the order will impose a manifest hardship on the defendant or his immediate family. Consequently, the Crime Victim's Rights Act not only complies with due process by affording defendants an evidentiary hearing to establish the proper amount of restitution, it also contains additional safeguards that prevent deprivation of liberty when criminal defendants are actually unable to compensate their victims.

IV

CONCLUSION

In sum, we hold that the sentencing court did not exceed its statutory authority in ordering restitution intended to compensate victims who were defrauded by defendant's course of criminal conduct, even though these losses were not the specific factual predicate of the defendant's conviction. Furthermore, the Crime Victim's Rights Act provides criminal defendants adequate process. We therefore reverse

---

tively challenges the accuracy of the factual information." *Grant, supra* at 233-234.

the decision of the Court of Appeals and reinstate the order of restitution.

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, and KELLY, JJ., concurred with TAYLOR, J.