**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0181n.06

No. 10-1152

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| BERYLLIN GAMBY; HAROLD GAMBY, | ) | |
| | ) | **FILED** |
| **Plaintiffs-Appellants,** | ) | **Feb 14, 2012** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| EQUIFAX INFORMATION | ) | COURT FOR THE EASTERN |
| SERVICES LLC et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **Defendants,** | ) | |
| | ) | **O P I N I O N** |
| FIRST NATIONAL BANK, of | ) | |
| Omaha, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |
| | ) | |

Before:  MOORE and COLE, Circuit Judges; BECKWITH, Senior District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.**  In 2006, Plaintiffs-Appellants Harold O. and

Beryllin Gamby filed suit against several entities, including Defendant-Appellee First National Bank

of Omaha ("FNBO" or "the Bank"), alleging violations of the Fair Debt Collection Practices Act

("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Michigan Collection Practices Act

("MCPA").  Their claims arose out of FNBO's attempts to collect payment on a debt incurred

because of their son Harold J. Gamby's unauthorized use of the FNBO credit-card account.  This

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

appeal challenges only the district court's disposition of the Gambys' claims under the MCPA against FNBO. The district court granted a declaratory judgment in favor of the Gambys on the issue of their liability for the debt but denied judgment as a matter of law on the Gambys' MCPA claims alleging that FNBO made false or misleading statements relating to that debt. Because the MCPA is a strict liability statute, those rulings were fundamentally inconsistent. The district court's determination that the Gambys did not owe the debt establishes that the Bank's earlier statements to the contrary were false. As a result, we must **REVERSE** the district court's order denying judgment as a matter of law and **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND

The Gambys filed suit against FNBO[1] on March 9, 2006 for alleged violations arising from the Bank's debt-collection efforts on credit-card debt that the Gambys claimed did not belong to them. The complaint included claims under federal and state debt-collection statutes, including the FDCPA, the FCRA, and the MCPA, as well as a request for a declaratory judgment specifying that the Gambys were not legally responsible for the amount owed. On June 9, 2009, the district court denied both parties' motions for summary judgment, and the case proceeded to a jury trial.

During trial, the parties established the following facts. The Gambys opened a joint Fleet credit-card account in September 2001. In late 2002, the card was reported as lost or stolen and the Gambys received a new account number. At about the same time and for reasons neither party could

---

[1]The complaint also included a number of other defendants that are no longer parties to the case and are therefore not discussed in this opinion.

explain, the statements associated with the new account number began going to a Sterling Heights, Michigan address that belonged to the Gambys' son, Harold J. Gamby. The Gambys nonetheless continued to pay the account until April 2003, when Mrs. Gamby notified a Fleet representative via telephone that she intended to close it and sent Fleet a $49.79 check marked "final."

During the same period in which Mrs. Gamby sought to close the Fleet account, Fleet sold that account, along with a large portfolio of others, to FNBO. All of the accounts—including the Gambys' account—were designated "open and active." R. 319 (Trial Tr. vol. IV, at 32, July 1, 2009). After the account was converted from Fleet to FNBO that summer, FNBO sent new cards to Harold and Beryllin Gamby at the Sterling Heights address that had been listed in the Fleet records.[2] Purchases and cash advances resumed shortly thereafter.

Upon reaching a balance of $12,247.40 in September 2004, the FNBO account went into default, and FNBO representatives began calling the Gambys seeking payment. Those calls continued despite the Gambys' repeated written and oral statements disputing their ownership of the account and notifying the Bank that the balance belonged to their son. According to the Bank, however, the Gambys' son had never applied for a credit-card account. FNBO therefore continued to seek payment from the Gambys based on its belief that the Gambys' Fleet account had never closed and, correspondingly, that the balance belonged to them.

---

[2]The Gambys dispute having received the cards and assert that a card was instead issued to their son after FNBO unilaterally reopened the account.

Just before jury deliberation, the Gambys moved for judgment as a matter of law on their state and federal claims and for a declaratory judgment that they did not owe FNBO any debt. The court denied judgment as a matter of law, but granted the declaratory judgment, stating:

> [O]bviously this matter was disputed and whether or not the $12,000 is owing by these parties, the parties testified that the $12,000 was their son's unauthorized charge. There's really been no disputed evidence . . . but that the son charged this $12,000. So the Court will issue a declaratory judgment that the Gambys do not owe the $12,000, which is not being sought in this case in any event.

R. 323 (Trial Tr. vol. VI, at 13–14, July 6, 2009). In a subsequent written order, the district court stated that over the course of the trial "[FNBO] offered no evidence that [the Gambys] owed the debt; rather, the evidence showed that the use of the FNBO credit card by [the Gambys'] son was unauthorized." R. 273 (Order Granting Decl. J. at 2). At trial, however, the district court refused to permit the Gambys to inform the jury of the court's judgment that the Gambys did not owe the debt. As a result, FNBO continued to argue to the jury that the Gambys were responsible for the charges.

The jury returned a verdict against the Gambys on all counts. The Gambys then filed a renewed motion for judgment as a matter of law, which the district court again denied. The court reasoned that "[a]lthough it became clear during trial that Gambys did not owe the debt, that conclusion was not clear when FNBO reported the debt. Therefore, the Court declines to find as a matter of law that the statements were untrue when made." R. 290 (Op. and Order at 7). The Gambys filed this appeal and challenge only the district court's denial of judgment as a matter of law on the MCPA claim against FNBO.

## II. ANALYSIS

"We review a district court's denial of 'a renewed motion for judgment as a matter of law *de novo*.'" *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (quoting *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005)). "Judgment as a matter of law is appropriate when 'viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.'" *Id.* (quoting *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004)).

Generally speaking, "[t]he Michigan Collection Practices Act prohibits abusive collection efforts . . . with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes.'" *Levant v. Am. Honda Fin. Corp.*, 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005) (quoting MICH. COMP. LAWS § 445.251(a)). Two provisions of the MCPA are at issue in this case. First, the Gambys argue that FNBO violated § 445.252(e), which states in relevant part that a "regulated person shall not . . . [m]ak[e] an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt . . . ." MICH. COMP. LAWS § 445.252(e). Second, they claim that the Bank violated § 445.252(f)(ii) by "[m]isrepresenting in a communication with a debtor . . . [t]he legal rights of the creditor or debtor." *Id.* § 445.252(f)(ii).[3] According to the Gambys, the

---

[3]There is no dispute that both the Gambys and FNBO fall under the MCPA's terms. The statute defines the term "debtor" as "a natural person obligated or *allegedly obligated* to pay a debt." MICH. COMP. LAWS § 445.251(d) (emphasis added). A "regulated person" encompasses "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . a state or federally chartered bank when collecting its own claim." *Id.* § 445.251(g)(ii).

district court's declaratory judgment finding no evidence that they owed any debt to FNBO "necessarily resolved the objective untruth of FNBO's statements to the Gambys," thereby demonstrating all elements needed to recover under the MCPA. Appellant Br. at 12. Specifically, the Gambys argue that because they never owed the credit-card debt, FNBO's communications regarding their obligation to pay it were necessarily false and misleading in violation of subsection (e). Relatedly, the Gambys also argue that the underlying falsity of the communications constituted a misrepresentation their legal rights in violation of subsection (f).

In response to these arguments, FNBO maintains that because the Gambys' names were on the account, they were legally responsible for the debt until the district court determined otherwise. FNBO further argues, without citation, that for its statements to have been untrue or misleading, they "must [have been] deceptive at the time the statement [was] made, not in retrospect after a court determines the legal rights of the parties." Appellee Br. at 12. Although FNBO criticizes the Gambys for failing to produce examples of specific false or misleading statements, it does not dispute the Gambys' assertions that it sought to collect the credit-card debt from them.

The Gambys, on the other hand, point to a number of allegedly misleading or false statements by FNBO, most of which are supported only by trial testimony recounting telephone conversations between the parties. Mrs. Gamby, for example, testified that FNBO's response to the Gambys' constant attempts to dispute ownership of the account was to simply to inform her that "You just got to pay. This is your account, you've got to pay it." R. 315 (Trial Tr. vol. II, at 118, June 29, 2009); *see also id.* at 122–23 (testifying that a Bank representative seeking to collect on the account told her

6

"Well, your name is on the account. You have to pay it. This is your account."); *id.* at 132 (testifying that the Bank was "calling our home all the time" seeking payment).[4] The Gambys also point to an August 10, 2005 letter from FNBO, which states:

> If this account is not your account, then **a police report should have been filed claiming ID theft/Fraud**. Your son has admitted that this is his account, which means this is a civil matter between your son and you. The only way to have this removed from your credit bureau is to press charges against your son, at that point we will them [sic] remove any derogatory information from you and Harold Gamby Sr's credit bureau and place it on your son, Harold Gamby Jr's. [sic] credit bureau. If you do decide against pressing charges then there is nothing that we can do to rectify this and we will continue to collect from you.

R. 229 (Pl.'s Resp. to FNBO's Mot. for Summ. J., Ex. 9).

The success of the Gambys' MCPA claim hinges on their contention that the statute imposes strict liability on banks that violate the statute's terms. Michigan courts have not addressed the question whether the MCPA imposes strict liability on entities seeking to collect from a debtor, and it is one of first impression in this court. To interpret the terms of the statute, we begin with its plain language. *See People v. Gahan*, 571 N.W.2d 503, 506 (Mich. 1997) ("It is the primary rule of statutory construction that the plain language of the statute be enforced.").

Initially, neither § 445.225(e) nor § 445.225(f) contains any intent or knowledge element. The absence of such a requirement strongly implies that an entity need not *intend* to engage in

---

[4]Notably, the Bank's records, about which a Bank representative testified at trial, basically support Mrs. Gamby's testimony regarding the Bank's attempts at collecting the credit-card debt. *See, e.g.*, R. 315 (Trial Tr. vol. II, at 92–93, June 29, 2009) (discussing records indicating that "I [the collector] said they are responsible parties. . . . [I]t is your account and [FNBO] will go to an outside collection agency when a full six months past due").

abusive collection practices to violate the MCPA. Lending further support for this reading, the statute contains a damages provision that reaches even nonwilful violations, which again suggests that even unwitting actors may fall within its terms. MICH. COMP. LAWS § 445.257(2). Those statutory damages, however, are minimal—totaling only the greater of $50 or the amount of actual damages. *Id.* Presumably, this allows the state to compensate innocent consumers by placing the risk of error on creditors while avoiding overly harsh penalties for good-faith but mistaken attempts at collecting past-due debts.

A parallel federal statute, the FDCPA, provides further guidance.[5] Federal courts have broadly recognized the FDCPA as a strict-liability statute. *See Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (observing that "§ 1692e applies even when a false representation was unintentional" (internal quotation marks omitted)); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) (noting that "intent is only relevant to the determination of damages"). Unlike the MCPA, however, the FDCPA contains an affirmative defense that allows debt collectors to show that their violation was unintentional and resulted from a bona-fide error. *See* 15 U.S.C. § 1692k(c). In light of the MCPA's plain language and its similarity to the FDCPA, we must read the omission of an analogous bona-fide-error defense in the state statute to signify Michigan's intent to avoid absolving debt collectors of liability, even for unintentional mistakes.

---

[5]The FDCPA contains language that is very similar to that found in the MCPA. Section 1692e, for example, states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Moreover, even under the FDCPA, outside of the relatively narrow bona-fide error exception, a good-faith error still gives rise to liability; indeed, a single act seeking payment from the wrong individual has been sufficient to constitute a violation. *See, e.g.*, *Turner*, 330 F.3d at 995 (indicating that a creditor may have violated § 1692e despite its lack of knowledge that the collection letter improperly sought payment of a debt already discharged in bankruptcy); *Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp. 2d 96, 101 (D. Conn. 2005) (determining that a debt collector made a false representation in violation of the FDCPA by seeking to collect on a debt that no longer existed); *Owens v. Howe*, No. 1:04-CV-152, 2004 U.S. Dist. LEXIS 22728, at *34–36 (N.D. Ind. Nov. 8, 2004) (unpublished order) (holding that a creditor's act of sending a collection letter to the wrong person violated the FDCPA provision prohibiting false representations).

Taken together, the plain language of the MCPA and the cases interpreting the FDCPA demonstrate that it is immaterial whether FNBO *knew* its statements were false or misleading at the time it sought payment from the Gambys for the credit-card debt. Because the district court found "no evidence" that the Gambys owed the debt, FNBO's undisputed statements that the Gambys were responsible for paying it were false.[6] Even if the statements were based on the Bank's reasonable belief at the time it sought payment from the Gambys, that belief does not alter the underlying falsity of its statements regarding the debt. Although this same result may not have occurred absent the

---

[6]The Bank's statements that the account belonged to the Gambys, on the other hand, were not false and misleading, as it appears the account was never properly closed and did likely belong to them. The Bank does not dispute, however, that its representatives went further, and actually indicated that the Gambys were legally responsible for the debt.

declaratory judgment—particularly in light of potentially significant factual questions as to the Gambys' knowledge and authorization of their son's activities—FNBO's failure to contest the issue resolves the MCPA liability question against it and entitles the Gambys to judgment as a matter of law under § 445.252(e).[7] Thus, on remand, the district court need only consider whether FNBO had the intent necessary to warrant the enhanced damages imposed for wilful violations of the MCPA, which may include civil fines, attorney's fees, and court costs. *See* MICH. COMP. LAWS § 445.257(2).

### III. CONCLUSION

For the reasons discussed above, we conclude that the district court erred in denying the Gambys' motion for judgment as a matter of law under the MCPA. We therefore **REVERSE** the district court's order and **REMAND** the case for rehearing on the issue of damages.

---

[7]Because we determine the Bank to be liable under § 445.252(e), we need not decide whether FNBO's statements also qualified as misrepresentations of the Gambys' rights as debtors under § 445.252(f).