CAVANAGH, J.
(dissenting). This Court granted leave to appeal, in part, to address whether “Michigan’s statutory restitution scheme is unconstitutional insofar as it permits the trial court to order restitution based on *425 uncharged conduct that was not submitted to a jury or proven beyond a reasonable doubt.” People v McKinley, 495 Mich 897 (2013), citing People v Gahan, 456 Mich 264; 571 NW2d 503 (1997). As our grant order illustrates, questions regarding the constitutionality of Michigan’s restitution scheme have arisen since the Legislature’s enactment of MCL 780.766(2) and after Gahan was decided. The majority, however, ultimately declines to address the limited issue on which this Court granted leave to appeal, instead finding dispositive an issue neither raised nor briefed by the parties — whether Gahan correctly interpreted MCL 780.766(2). I disagree with the majority’s characterization of Gahan as “badly reasoned,” but I also object to the majority’s decision to lightly cast aside a unanimous opinion of this Court in disregard of a fundamental premise of our adversarial system of adjudication in which each party is given a full and fair opportunity to be heard. See NASA v Nelson, 562 US_; 131 S Ct 746, 756 n 10; 178 L Ed 2d 667 (2011). Because I believe that Gahan was correctly decided, I must respectfully dissent.
I. BACKGROUND: PEOPLE v GAHAN
The majority opinion gives little attention and weight to Gahan's actual analysis. Accordingly, a brief overview of Gahan is necessary.
In Gahan, a defendant sold motor vehicles on consignment at his used car lot, repeatedly telling his customers that their cars sold for less than the true amount of the sale and keeping the difference for himself. The defendant perpetrated this scheme on numerous individuals, ultimately leading to the defendant’s conviction of one count of embezzlement regarding a victim who was swindled out of $1,100. Gahan, *426 456 Mich at 265-267.[1] After the defendant was convicted, a probation officer prepared a presentence investigation report quoting an investigator as saying that the prosecution “ ‘originally had 48 counts against the defendant involving transactions . . . that went on for over a year.’ "Id. at 268. In order to compensate all known victims, the probation officer recommended that the defendant be ordered to pay restitution in an amount of more than $28,000, which the trial court subsequently adjusted to $25,000 in its order of restitution. Id. at 268-269.
The Court of Appeals vacated the order of restitution in a split decision, with the majority concluding that, under the plurality opinion of People v Becker, 349 Mich 476, 486; 84 NW2d 833 (1957), “a defendant can be ordered to pay restitution only to the victim(s) of the crime(s) for which he is convicted.” People v Gahan, unpublished opinion per curiam of the Court of Appeals, issued January 16,1996 (Docket No. 172159), p 5. The Court of Appeals majority reasoned that, although there were similarities between the defendant’s crime and the other acts, the defendant was neither tried for nor convicted of the other acts and, thus, the other acts were related to transactions that were independent from the single transaction that provided the factual basis for the conviction. Stated another way, the majority of the panel held that the other acts were not part of the “course of conduct that gave rise to this conviction.” Id. The Court of Appeals dissent disagreed, explaining that MCL 780.766(2), part of the Crime Victim’s Rights Act, requires that a court order “ ‘that the defendant . . . make restitution to any victim of the defen *427 dant’s course of conduct that gives rise to a conviction,’ ” with a “victim” defined by MCL 780.766(1) as “ ‘an individual who suffers direct. . . financial. . . harm as a result of the commission of a crime.’ ” Gahan, unpub op at 1 (SMOLENSKI, J., concurring in part and dissenting in part). On this basis, the Court of Appeals dissent explained that the victims of uncharged conduct were “also victims of the commission of a crime, i.e., defendant’s other acts of commercial fraud,” and “[t]hese persons were also victims of defendant’s course of conduct, i.e., his commercial fraud, that gave rise to a conviction, i.e., his conviction in this case.” Id.
In Gahan, we granted leave to appeal to consider whether MCL 780.766(2) permits a sentencing court to “order a defendant to pay restitution to compensate all the victims who were defrauded by [the defendant’s] criminal course of conduct, even though the specific criminal acts committed against some . . . victims were not the [factual predicate for] the defendant’s conviction.” Gahan, 456 Mich at 265. See, also, id. at 269-270. After full briefing and oral argument, this Court unanimously concluded that it does. Id. at 270.
In reaching our conclusion, we stated that the statute applicable at the time was clear that “restitution may be ordered with respect to ‘any’ victim” as defined by the act. Id. at 271 (emphasis added).* [2] Considering the *428 phrase “course of conduct,” this Court explained that the phrase had acquired a unique meaning at common law before the enactment of the Crime Victim’s Rights Act, MCL 780.751 et seq. Specifically, we explained that the phrase “course of conduct” originated in cases involving the proper scope of restitution ordered under MCL 771.3 as a condition of probation. Under that statute, which provided that a court may require a probationer to “[p]ay restitution to the victim,” defendants generally had argued that restitution was limited to those “losses attributable to the specific charges that resulted in the defendant’s conviction.” Gahan, 456 Mich at 271. We noted, however, that panels of the Court of Appeals had repeatedly rejected this argument. Specifically, the Court of Appeals had held that restitution orders requiring a defendant to pay a restitution amount exceeding the losses attributable to the specific charges resulting in the conviction were appropriate because “principles of justice required that the defendant ‘pay back the entire amount obtained by his course of criminal conduct.’ ” Id. at 272, quoting People v Seda-Ruiz, 87 Mich App 100, 103; 273 NW2d 602 (1978). Because the phrase “course of conduct” had developed a unique meaning at common law, this Court held that the common-law meaning of the phrase should be carried over into the Crime Victim’s Rights Act, absent an indication of a contrary legislative intent. Gahan, 456 Mich at 272. Finding no such indication, this Court held that the Legislature did not intend to deviate from prior caselaw holding that a defendant should be required to compensate for all losses attributable to his illegal scheme “culminating] in his con *429 viction,” even if some of the losses did not form the factual basis of the charge resulting in conviction. Id.[3] Gahan explained that “totally dissimilar crimes committed at different times may not satisfy the statutory ‘course of conduct’ requirement,” but such facts were not presented in Gahan. Thus, the Court declined to define the exact parameters of that phrase, noting that the defendant’s repeated scheme of defrauding his customers in the same or similar manner clearly fell within the confines of that phrase as developed in previous caselaw. Id. at 273 n 11. Accordingly, Gahan reversed the Court of Appeals and reinstated the order of restitution. Id. at 277-278.
II. ANALYSIS
At issue is whether the majority is correct that Gahan is an “untenable,” “badly reasoned,” and “plainly incomplete” opinion that “ignored” the language of the statute. Despite the majority’s bold characterizations of Gahan’s analysis, I continue to believe that Gahan correctly interpreted the plain language of the statute at issue.
As the above background illustrates, this Court was not presented with a novel issue in Gahan. Dating back to the late 1960s, panels of the Court of Appeals have been asked to address the proper scope of restitution orders in light of arguments from defendants, like the *430 defendant in Gahan, that this Court’s plurality opinion in Becker and the applicable statutory language limited restitution orders to only those losses attributable to the specific charges or transaction that resulted in a conviction. See, e.g., People v Nawrocki, 8 Mich App 225, 227; 154 NW2d 45 (1967) (upholding an order of probation that required a defendant to pay restitution for forged checks in addition to the forged check for which he was convicted of uttering and publishing).
Notably, in People v Gallagher, 55 Mich App 613; 223 NW2d 92 (1974), the Court of Appeals addressed whether MCL 771.3 authorized restitution “ ‘only as to loss caused by the very offense for which [the] defendant was tried and convicted,’ ” as argued by the defendant. Gallagher, 55 Mich App at 617-618, quoting Becker, 349 Mich at 486. At the time, MCL 771.3 provided that, as a condition of probation, a court could order restitution “ ‘in whole or in part to the person or persons injured or defrauded, as the circumstances of the case may require or warrant, or as in its judgment may be meet and proper.’ ” Gallagher, 55 Mich App at 618, quoting MCL 771.3. Agreeing with Nawrocki that the statutory language authorized restitution for losses exceeding those that formed the factual basis for the conviction, Gallagher rejected the defendant’s reliance on Becker, which, after a review of federal authority, concluded that restitution ordered under MCL 771.3 could only be imposed for offenses for which the defendant was convicted. Becker, 349 Mich at 485-486. See, also, Gallagher, 55 Mich App at 618. Gallagher explained that not only was Becker nonbinding but, in enacting MCL 771.3, the Michigan Legislature did not choose to follow the narrower federal approach, Gallagher, 55 Mich App at 618, which limited restitution to “ ‘aggrieved parties for actual damages or loss caused by the offense [for] which conviction was had,’ ” United *431 States v Hoffman, 415 F2d 14, 21 (CA 7, 1969), quoting 18 USC 3651. Rather, Gallagher held that Michigan’s broadly worded restitution statute was similar to those of other states insofar as the Michigan statute “permitted] restitution of the whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct.” Gallagher, 55 Mich App at 618, citing People v Dawes, 132 Ill App 2d 435; 270 NE2d 214 (1971) (upholding a restitution order as to the single complainant, but also as to other victims of the defendant’s conduct that were subsequently discovered).
Later panels of the Court of Appeals applied Gallagher’s interpretation of MCL 771.3, holding that the statute permitted restitution to all victims of a defendant’s course of conduct, even if the victim’s specific losses did not form the factual basis of the defendant’s conviction. See Seda-Ruiz, 87 Mich App at 102-103 (rejecting a challenge to a restitution order on the ground that it was unlawful for the defendant to be required to pay back amounts for other losses not mentioned in the specific charges for which the defendant was convicted);[4] People v Pettit, 88 Mich App 203, *432 205-206; 276 NW2d 878 (1979) (quoting and agreeing with Gallagher that restitution may be imposed under MCL 771.3 for the “ ‘whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct’ ”); People v Alvarado, 142 Mich App 151, 162; 369 NW2d 462 (1984), disapproved on other grounds People v Music, 428 Mich 356; 408 NW2d 795 (1987) (same). Although some panels of the Court of Appeals applied the Becker plurality to limit restitution to only those losses caused by the very offense for which the defendant was tried and convicted, see, e.g., People v Blaney, 139 Mich App 694; 363 NW2d 13 (1984), at the time the Crime Victim’s Rights Act was enacted, the weight of authority allowed restitution ordered as a condition of probation for losses exceeding the losses attributable to the specific charges that resulted in a defendant’s conviction.* **[5]
With this expanded historical backdrop in mind, I continue to believe that Gahan correctly determined that the phrase “course of conduct” in the Crime Victim’s Rights Act should be given a broad construction consistent with its unique meaning at common law. As this Court has repeatedly stated, “[i]t is a well-established principle of statutory construction that the *433 Legislature is presumed to act with knowledge of statutory interpretations by the Court of Appeals and this Court.” Gordon Sel-Way, Inc v Spence Bros, Inc, 438 Mich 488, 505-506; 475 NW2d 704 (1991). Thus, the Legislature is “deemed to act with an understanding of common law in existence before . . . legislation . . . [is] enacted.” Nation v W D E Electric Co, 454 Mich 489, 494; 563 NW2d 233 (1997) (emphasis added). “This Court will [also] presume that the Legislature... is familiar with the principles of statutory construction,” People v Hall, 391 Mich 175, 190; 215 NW2d 166 (1974), particularly the notion that words and phrases that have acquired a unique meaning in the common law are interpreted as having the same meaning when they appear in later enacted statutes dealing with the same subject matter “unless a contrary intent is plainly shown,” People v Covelesky, 217 Mich 90, 100; 185 NW 770 (1921). See, also, Pulver v Dundee Cement Co, 445 Mich 68, 75; 515 NW2d 728 (1994); MCL 8.3a. In other words, in keeping with the canons of statutory interpretation, the Legislature is presumed to have known the meaning of “course of conduct” as it relates to restitution when it enacted the Crime Victim’s Rights Act.
It bears emphasizing that, despite conflicting opinions of the Court of Appeals regarding the applicability of the Becker plurality and the proper scope of restitution ordered as a condition of probation, the Legislature nevertheless incorporated a restitution provision into the Crime Victim’s Rights Act substantially mirroring the language of Gallagher and its progeny.[6] In light of *434 the well-established use of the phrase “course of conduct” to broadly define the scope of restitution orders imposed as a condition of probation, Gahan was correct that “there was no indication from the Legislature that the common-law meaning was not being incorporated” into the subsequently enacted Crime Victim’s Rights Act. Gahan, 456 Mich at 272. Indeed, given the Legislature’s knowledge of existing precedent at the time of the Crime Victim’s Rights Act’s enactment in 1985, see Nation, supra, I cannot conclude that the Legislature’s selection of the phrase “course of conduct” within MCL 780.766(2) “plainly shows” a legislative intent to incorporate something other than the phrase’s common-law meaning, see Covelesky, supra. Had the Legislature wished to give MCL 780.766(2) the narrow meaning the majority opinion gives it today, the Legislature could *435 have instead defined the scope of a restitution order under MCL 780.766(2) in a manner that was consistent with the federal statutes discussed in Gallagher, 55 Mich App at 619, and Becker, 349 Mich at 485-486. Indeed, the Legislature is deemed to be aware of this Court’s plurality decision in Becker, yet the Legislature did not limit restitution consistent with that opinion to only those “loss[es] caused by the very offense for which [the] defendant was tried and convicted”, Becker, 349 Mich at 486 — a proposition continuously advocated for by defendants decades before the Crime Victim’s Rights Act’s enactment. Instead, the Legislature chose the broader phrase — “course of conduct that gives rise to a conviction” — which was consistent with Court of Appeals caselaw rejecting Becker.
I also disagree with the majority that, in determining the Legislature’s intent, seven Justices of this Court “ignored” and “devoted no attention to” one phrase within MCL 780.766(2), i.e., that the defendant make restitution to any victim of the defendant’s course of conduct “that gives rise to the conviction.” The majority asserts that, because the phrase “gives rise to” means “to produce or cause,” the statutory language requires a causal link between conduct for which the defendant is criminally charged and the defendant’s conviction. Stated another way, the majority reasons that “[o]nly crimes for which a defendant is charged ‘cause’. . . the conviction” and, thus, “conduct for which a defendant is not criminally charged and convicted is necessarily not part of a course of conduct that gives rise to the conviction.” Although I agree with the majority that the statute requires some type of a causal link between a defendant’s “course of conduct” and his conviction, I disagree with the majority that the requisite connection necessarily excludes uncharged conduct from the scope of a defendant’s “course of conduct.” As Gahan ex *436 plained, the historical use of the phrase “course of conduct” included uncharged conduct that was related to a defendant’s illegal scheme from which the defendant’s conviction arose. Thus, the statutorily required causal connection is that a defendant’s conviction arises from an illegal scheme. See Gahan, 456 Mich at 272-273. If that connection exists, a court may order restitution for the commission of related, but uncharged crimes, within that same illegal scheme.
Similarly, Gahan does not permit a restitution award for any victim of a defendant’s course of conduct without qualification, as the majority claims. Instead, by requiring that a defendant’s conviction must have arisen from a specific “course of conduct,” the Legislature limited the “course of conduct” from which restitution may be ordered. Thus, a defendant cannot be ordered to pay restitution for “totally dissimilar crimes committed at different times,” or those involving an unrelated illegal scheme. Gahan, 456 Mich at 273 n 11. Rather, the defendant is only required to compensate for “all the losses attributable to the illegal scheme that [actually] culminated in [the] conviction” that triggered restitution. Id. at 272. As Gahan explained, in order for uncharged conduct to be included within the restitution order, the uncharged conduct must have occurred as part of the same or similar illegal scheme from which the defendant’s conviction arose. Gahan, 456 Mich at 272-273. Accordingly, Gahan properly concluded that the statutory language requires a defendant to provide restitution not only to the victims that are the subject of the very act that results in the defendant’s conviction, but also to those harmed by the defendant’s related course of criminal conduct from which the defendant’s conviction arose. In doing so, Gahan properly gave effect to each word within the statute, while giving the phrase “course of conduct” its unique common-law *437 meaning. In contrast, by holding that only conduct for which a defendant is “charged and convicted is ... part of the ‘course of conduct that gives rise to the conviction’ ” (emphasis added), the majority reads the phrase “course of conduct” out of the statute, effectively rewriting the statute to limit restitution to only those losses suffered by “victims of the defendant’s conduct that results in a conviction.”[7]
Notably, our grant order in this case assumed that Gahan’s statutory interpretation was correct. Yet, despite the interpretation unanimously afforded to the statute’s plain language by this Court in Gahan, the majority brushes Gahan aside on the basis of its conclusion that Gahan is so poorly reasoned that it must be overruled without full briefing and oral argument on *438 the issue.[8] In doing so, the majority ignores that the Legislature has subsequently amended MCL 780.766, but it has not otherwise sought to correct what the majority claims is Gahan’s “plainly incomplete” interpretation in the 17 years since Gahan was decided.
Further, in classifying Gahan as an “untenable” opinion that “ignored” the statutory language, the majority fails to appreciate that Gahan was decided after a careful review of a divided Court of Appeals opinion, after full briefing and oral argument, and after post-argument discussions. Thus, in overruling Gahan by finding dispositive an issue neither raised nor briefed by the parties in this case, the majority not only fails to appreciate the thoughtful consideration given to the statutory language by the Gahan Court, but it also fails to consider whether the advocates in this case could *439 have added anything insightful to the newfound debate over the correctness of unanimous precedent.[9] Quite simply, I disagree with the majority that Gahan was wrongly decided.
III. CONCLUSION
Today, the majority holds that seven Justices of this Court ignored a portion of the statute at issue. I disagree with the majority’s characterization of Gahan’s analysis. But I also disagree with the majority’s decision to disregard one of the foundational principles of our adversarial system of justice by failing to give each party an opportunity to be heard in order to assist this Court in understanding the issue before it and prevent a preliminary understanding of the issue from improperly influencing the Court’s final decision of an issue that was previously and unanimously decided. Accordingly, I must respectfully dissent.

 The defendant also pleaded guilty to one count of embezzlement involving another victim in a separate proceeding. Gahan, 456 Mich at 267 n 3.

 After the defendant’s conviction in Gahan, the Legislature amended the Crime Victim’s Rights Act to “require, rather than permit, that restitution be ordered.” Gahan, 456 Mich at 270 n 6. Specifically, MCL 780.766 now provides, in relevant part:
(1) As used in this section only, “victim” means an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime.. ..
(2) ... [W]hen sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty *428 authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant’s course of conduct that gives rise to the conviction ....

 This Court also compared the broader statutory language from MCL 780.766(2) with federal caselaw interpreting a federal restitution statute. Gahan, 456 Mich at 271 n 8. Specifically, unlike its federal counterpart, MCL 780.766(2) does not limit restitution to the offense of conviction by providing that, “when sentencing a defendant convicted of an offense,” a court “may order... that the defendant make restitution to any victim of such offensel.T 18 USC 3663(a)(1)(A) (emphasis added). See, also, Gahan, 456 Mich at 271 n 8.

 In Seda-Ruiz, the Court of Appeals remanded to the trial court for an evidentiary hearing to address the defendant’s argument that he was not given the opportunity to examine all of the checks that were the subject of the restitution order and that some of the checks for which he was required to pay restitution were “not his checks.” Seda-Ruiz, 87 Mich App at 104. The majority states that the concurring opinion in SedaRuiz, which agreed with the decision to remand but would have additionally limited restitution to only those checks for which the defendant had pleaded guilty or which were part of the plea agreement, id. at 105, suggests that Gallagher’s interpretation of the proper scope of restitution was in dispute. Although some jurists, such as the concurring author in Seda-Ruiz, may have disagreed with Gallagher’s nonbinding interpretation of the proper scope of restitution under MCL 771.3, see MCR 7.215(J)(1), it does not follow that the meaning of the phrase “course of conduct” as used by Gallagher to describe the scope of restitution under MCL 771.3 was unsettled at the time of the Crime Victim’s Rights Act’s *432 enactment, especially in light of Gallagher’s clear rejection of the proposition that MCL 771.3 limited restitution to only those losses caused by the offense for which the defendant was convicted.

 In fact, after the Crime Victim’s Rights Act was enacted, panels of the Court of Appeals continued to apply Gallagher’s interpretation to MCL 769.1a, Michigan’s similarly worded general restitution statute, as well as MCL 780.766(2), noting that the language adopted by the Legislature was essentially identical to that employed by prior Court of Appeals opinions interpreting MCL 771.3. See, e.g., People v Littlejohn, 157 Mich App 729; 403 NW2d 215 (1987); People v Bixman, 173 Mich App 243; 433 NW2d 417 (1988); People v Greenberg, 176 Mich App 296; 439 NW2d 336 (1989); People v Persails, 192 Mich App 380; 481 NW2d 747 (1991); People v Letts, 207 Mich App 479; 525 NW2d 171 (1994).

 Compare Gahan, 456 Mich at 270 (emphasis added) (noting that MCL 780.766(2) provided that a trial court may order that the defendant make restitution to “any victim of the defendant’s course of conduct which gives rise to the conviction"), with Gallagher, 55 Mich App at 618 (emphasis added) (interpreting MCL 771.3 as permitting restitution for *434 “the whole loss caused by a course of criminal conduct upon conviction of a crime arising out of that conduct”). Notably, MCL 771.3 was subsequently amended to include a phrase nearly identical to the phrase at issue in this case, illustrating the Legislature’s intent to codify Gallagher’s, rather than Becker’s, interpretation of the proper scope of a restitution order under MCL 771.3. See 1993 PA 343; MCL 771.3(l)(e).
That MCL 771.3 was subject to varying interpretations does not undermine Gahan’s interpretation of MCL 780.766(2), as the majority states. As previously noted, the Legislature is presumed to act with knowledge of judicial interpretations by this Court and the Court of Appeals, see Ford Motor Co v City of Woodhaven, 475 Mich 425, 439-440; 716 NW2d 247 (2006), yet, in defining the scope of restitution under the Crime Victim’s Rights Act, the Legislature did not simply incorporate the language of MCL 771.3 into the act. Instead, it selected language mirroring Gallagher’s broad interpretation of MCL 771.3, rather than incorporating language similar to decisions that limited restitution under MCL 771.3 to only those losses related to the transaction that formed the factual basis for the conviction. Simply stated, the fact that Gallagher’s interpretation of MCL 771.3 was not universally followed is irrelevant in light of the Legislature’s awareness of conflicting interpretations of MCL 771.3 and its subsequent choice to incorporate language mirroring Gallagher’s “course of conduct” language into the Crime Victim’s Rights Act.

 I also disagree with the majority’s suggestion that Gahan’s interpretation of MCL 780.766(2) conflicts with MCL 780.767. MCL 780.767(1) provides that, “[i]n determining the amount of restitution to order under [MCL 780.766], the court shall consider the amount of the loss sustained hy any victim as a result of the offense.” The majority concludes that, by referring to “the offense,” MCL 780.767 can “only refer to the offense of which the defendant was convicted, because it is that ‘offense’ that makes him subject to being ordered to pay restitution in the first place.” However, MCL 780.767 can be read harmoniously with Gahan’s interpretation of MCL 780.766(2). Notably, it is MCL 780.766(2) that defines the proper scope of the restitution order, explaining that the order shall include losses for any victim of a defendant’s “course of conduct that gives rise to the conviction.” Accepting that the phrase “course of conduct” within MCL 780.766(2) includes uncharged conduct that does not form the factual basis for a defendant’s conviction, MCL 780.767 merely directs the sentencing court to consider, in determining the amount of restitution to order under MCL 780.766(2), the loss sustained by any victim as a result of an uncharged offense that is a part of the defendant’s illegal scheme from which the defendant’s conviction arose. To that end, although the issue was not raised by the parties and therefore I do not opine on it, nowhere in the 21 pages of transcript of the restitution hearing did defense counsel contradict the prosecution’s evidence regarding the defendant’s commission of the uncharged crimes or the amount of restitution assessed for each.

 The majority guides us astray in suggesting that the parties addressed the validity of Gahan’s statutory analysis in their briefs to this Court. In light of this Court’s grant order, which limited, the issues to be briefed, it is no surprise that the parties did not actually argue whether this Court should overrule Gahan on nonconstitutional statutory interpretation grounds in their briefs, but instead focused solely on the issues raised in this Court’s grant order — whether restitution is a criminal penalty and whether, in light of post-Gahan precedent, Michigan’s statutory restitution scheme is unconstitutional insofar as it permits a trial court to order restitution based on uncharged conduct. Further, although one litigant made a single, conclusory comment at oral argument regarding Gahan’s interpretation of the statutory language, in my view, that does not substitute for full briefing on the actual substance of Gahan’s statutory analysis from both of the parties in this case.
Finally, the majority is correct that I do not reach the constitutional issue on which this Court granted leave to appeal, but it is not because, as the majority suggests, a “constitutional hurdle prove[d] unresolvable to [this] dissent.” Instead, it is precisely because Gahan was correctly decided that I believe that this Court should address the issues upon which it granted leave to appeal, rather than overruling a longstanding and coi'rect determination of the Legislature’s intent in enacting the Crime Victim’s Rights Act. Nevertheless, because my position has not garnered majority support, I decline to opine on those issues.

 It requires no citation to authority to note that the vast majority of convictions in this state result from guilty pleas, many of which are the result of plea negotiations when a prosecutor offers to dismiss some charges if a defendant agrees to plead guilty to others. In light of crime victims’ constitutional right to restitution, see Const 1963, art 1, § 24, only time will tell the impact of the majority opinion on prosecutorial charging decisions, plea negotiations, and trials.