PEOPLE v COLLINS

Docket No. 207178. Submitted September 14, 1999, at Detroit. Decided December 17, 1999, at 9:00 A.M.

Richard H. Collins was convicted by a jury in the St. Clair Circuit Court, Peter E. Deegan, J., of two counts of embezzlement of property belonging to oneself and another and of one count of larceny over $100 involving funds of an ice-rink business. The court sentenced the defendant to forty-eight months of probation, including one year in jail. Two hundred seventy days of jail time was to be suspended if the defendant paid restitution. The defendant appealed.

The Court of Appeals *held*:

1. The convictions of embezzlement of jointly owned funds were supported by the evidence at trial. By introducing evidence that two investors led the defendant to believe that he had an ownership interest in an ice rink acquired by the investors, the defendant created a factual question with respect to his ownership of part of the business. The defendant's own proofs allowed the jury to find that he was an owner.

2. The trial court's order requiring the defendant to pay restitution as a condition for reducing his jail term violates MCL 769.1a(14); MSA 28.1073(14), which prohibits incarceration as a consequence for failure to pay restitution unless the defendant has the ability to pay the ordered restitution and has not made a good-faith effort to do so. The matter must be remanded to the trial court for findings of fact concerning whether the defendant had the ability to pay restitution and was in wilful default.

Convictions affirmed; case remanded for further proceedings regarding the sentence.

1. EMBEZZLEMENT — PROPERTY BELONGING TO ONESELF AND ANOTHER.

There are six elements to the offense of embezzlement of property belonging to oneself and another: the money in question must have belonged to the defendant and a co-owner, the defendant must have had a relationship of trust with the co-owner, the money must have come into the defendant's possession because of the relationship of trust, the defendant must have dishonestly disposed of or converted the money to the defendant's own use or secreted the

money, the act must have been without the consent of the co-owner, and at the time of the conversion, the defendant must have intended to defraud or cheat the co-owner (MCL 750.181; MSA 28.378).

2. SENTENCES — PROBATION – RESTITUTION — INCARCERATION.

A defendant who is sentenced to probation that includes a period of incarceration in jail that may be reduced upon payment of restitution cannot be incarcerated for the full unreduced period when restitution is not made unless the sentencing court finds that the defendant has the resources to pay the ordered restitution and has not made a good-faith effort to do so (MCL 769.1a[14]; MSA 28.1073[4]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Elwood L. Brown*, Prosecuting Attorney, and *Timothy K. Morris*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *C. Joseph Booker*), for the defendant on appeal.

Before: WHITBECK, P.J., and SAAD and HOEKSTRA, JJ.

SAAD, J. Defendant appeals as of right from his jury convictions of two counts of embezzlement of property belonging to oneself and another, MCL 750.181; MSA 28.378, and one count of larceny over $100, MCL 750.356; MSA 28.588.[1] The court sentenced defendant to forty-eight months of probation, including one year in the county jail. The sentence provided for the suspension of 270 days of the jail time if defendant paid $31,505.50 in restitution. We affirm the convictions, but remand for findings of fact regarding the trial court's order that defendant can avoid jail time if he pays restitution.

---

[1] The Legislature amended this provision with 1998 PA 311 after the offenses in this case.

I. FACTS AND PROCEEDINGS

This embezzlement and larceny case arises from defendant's business dealings with Bruce Morris and Frederick Schienke. Defendant was the sponsor of a boy's hockey team, the USA Huskies. Morris met defendant while Morris' son was a member of the USA Huskies. Schienke was Morris' friend and business attorney.

In the fall of 1994, defendant and Morris decided to purchase or construct an ice rink. They eventually decided to purchase the Glacier Pointe ice rink in Port Huron. Schienke drafted the purchase documents and invested $200,000 in the purchase. Morris invested $400,000. Defendant did not invest any money in the venture, but Morris and Schienke wanted to involve him in the enterprise because of defendant's expertise in operating ice rinks. Morris and Schienke placed ownership of the rink in the name of Morris Properties, LLC, a limited liability company they had formed. Defendant was not a member of Morris Properties. The three men also formed a corporation named USA Huskies North, Inc., to operate the rink and pay rent to Morris Properties. Defendant was one of the incorporators, officers, and members of the board of directors of USA Huskies North, Inc. Defendant quit his $60,000 to $70,000 position with a mortgage company to work full time at the rink.

At trial, the witnesses gave conflicting testimony regarding defendant's role and ownership interest in the ice rink. Defendant testified that, at the time of purchase, he believed that he acquired a fifty percent ownership interest of the rink because of the work he did in preparing for the purchase. However, he admit-

ted that he never received any shares of stock in the corporation. Morris and Schienke denied that defendant acquired any ownership interest in the corporation at the time of purchase. They testified that they agreed to give defendant a one-third interest in the corporation and one-third of the net profits only after the completion of one year of business. Morris testified that he never intended to give defendant any interest in the rink property owned by Morris Properties before that.[2] The witnesses' testimony also conflicted regarding defendant's compensation for operating the rink. Morris and Schienke testified that they agreed that defendant would take a draw against the projected profits of the corporation, but that defendant declined to accept because he wanted to prove first that he could run the rink. From October 20, 1995, until January 1, 1996, defendant received $500 a week. Morris did not explain why this draw stopped. Defendant testified that Morris agreed to pay him a yearly salary of $70,000 and sponsor the USA Huskies hockey team. Morris and Schienke denied that they agreed to pay a $70,000 salary or sponsor the team, which would have cost between $28,000 and $35,000 a year.

In February 1995, Morris began to suspect that defendant was stealing rink proceeds. After finding a discrepancy between the computerized accounting system and paper receipts, Morris examined the February bank statement and discovered that defendant had drawn a $13,400 check from the rink account, which he deposited into the hockey team's account.

---

[2] Morris also testified that he had envisioned defendant being an equal partner in the rink property when they first began discussing the venture, before Morris knew that defendant would not be investing any money.

Defendant was the only authorized signatory of the hockey team's account. Defendant admitted writing the $13,400 check, but he averred that he was entitled to the money under Morris' agreement to sponsor the team and pay defendant a salary.

In March 1995, Morris noticed that the rink had not received a check from a client, Dr. Brieden, who owed the rink $3,500 for an ice party and for advertising on the Zamboni machine. Suspecting defendant's malfeasance, Morris falsely told defendant that he had called Dr. Brieden about the check, but that Dr. Brieden had been out. Later that day, defendant told Morris that Dr. Brieden had dropped off the check. When Morris asked to see the check, defendant told him that it was already deposited. Morris learned from bank records that defendant had deposited the check into the hockey team's account. Defendant admitted taking the check, but again averred that he believed he was authorized to do so because of the rink's sponsorship of the team. Morris terminated defendant's employment after the Brieden check incident.

Initially, the prosecution charged defendant with two counts of embezzlement by an agent, MCL 750.174; MSA 28.371. At trial, defendant tried to exculpate himself by testifying that he reasonably and sincerely believed he had an ownership interest in the business. Consequently, the prosecution moved to conform the charges with proofs, adding alternate charges of embezzlement of property belonging to oneself and another, MCL 750.181; MSA 28.378. Defendant did not object to the amendment of the charges. The jury found defendant guilty of counts I

and II under the alternate charge of embezzlement by a joint owner.[3]

The trial court sentenced defendant to forty-eight months of probation, with 360 days (not consecutive, but divided into periods) to be spent in jail. The court ordered defendant to pay $31,505.50 in restitution, and stated that 270 days of the jail time would be suspended if defendant satisfied the restitution obligation.

Defendant now appeals the embezzlement convictions and the sentence.

II

Defendant argues that his convictions of embezzlement of jointly owned funds were not supported by sufficient evidence. When reviewing a challenge to the sufficiency of the evidence, this Court must examine the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Here, there was sufficient evidence to support defendant's conviction of embezzlement of jointly owned property.

In Michigan, the offense of embezzlement is governed by two different statutes: MCL 750.181; MSA 28.378, which addresses embezzlement by a joint owner, and MCL 750.174; MSA 28.371, which governs embezzlement by an agent or employee. Although the statutes treat embezzlement by a co-owner and

---

[3] Defendant was also convicted of a third charge, larceny over $100, for billing hockey jerseys purchased for his team to the rink.

embezzlement by an agent as distinct offenses, the remaining elements of the two offenses are identical: (1) the money in question must belong to the principal (or to the defendant and a co-owner), (2) the defendant must have a relationship of trust with the principal as an agent, employee (or co-owner), (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal (or co-owner), and (6) at the time of conversion, the defendant intended to defraud or cheat the principal (or co-owner). CJI 27:1:01; *People v Wood*, 182 Mich App 50, 53; 451 NW2d 563 (1990).

Here, the prosecution initially charged defendant under the embezzlement by an agent statute. At trial, defendant's strategy was to show that his use of the business' assets was proper, because he reasonably, though incorrectly, believed that he had an ownership interest in the business and that he was entitled to the funds toward his salary and sponsorship of the hockey team. Consequently, the prosecution moved to amend the information to conform to proofs by adding the alternate charges of embezzlement by a co-owner. Defendant did not object to this amendment, and the jury convicted defendant of these alternate charges. Defendant now argues that there was insufficient evidence to convict him under the co-owner statute because the evidence established only that defendant *believed* he had an ownership interest when, in fact, he did not. Defendant does not challenge the sufficiency of the evidence relating to any other element of embezzlement.

We affirm defendant's conviction because there was sufficient evidence to convict him under the owner statute. By introducing evidence that Morris and Schienke led him to believe he had an ownership interest when they acquired the business, defendant created a factual question with respect to his ownership of part of the business. At the very least, he established that there was ambiguity surrounding his status as an owner or agent. Defendant's own proofs allowed the jury to find that he was an owner. We will not grant relief merely because defendant's strategy backfired and helped establish his guilt under the alternate charge.[4]

Although defendant does not challenge the sufficiency of the evidence regarding the remaining elements of embezzlement, we briefly note that the evidence was sufficient. Here, the prosecution proffered evidence that defendant wrote checks to himself on a corporate checking account and deposited these checks in a bank account to which only he had access; he had access to the corporate checking account only because of his relationship of trust with the other men. *Wood, id.* at 53 (second, third, and fourth elements). Additional evidence demonstrated that defendant deposited a client's check, intended for the rink, into the bank account to which only defendant had access. Testimony also established that defendant attempted to cover up his embezzlement by hiding bank statements and deposit slips, and that defendant admitted part of the theft to a police

---

[4] Additionally, defendant's argument wrongly implies that one who believes himself to be a joint owner, when in fact he is not, cannot be convicted under either statute. There is no such "no man's land" between the two statutes.

officer (evincing defendant's intent and the owners' lack of consent). This evidence was sufficient to sustain defendant's convictions. *People v Maculey*, 22 Mich App 58; 176 NW2d 706 (1970).

III

Defendant also appeals the trial court's order requiring defendant to pay $31,505.50 in restitution as a condition for reducing his jail term. He contends that this order violates the restitution statute and the Equal Protection Clauses of the state and federal constitutions because it punishes him for failing to pay restitution without factual findings that he is able to pay and in wilful default of the order. We agree and remand for further proceedings.

The trial court sentenced defendant to forty-eight months of probation and ordered him to pay $31,505.50 in restitution.[5] The trial court also ordered defendant to serve 360 days in jail. However, the trial court stated that 270 days of this sentence could be

---

[5] Defendant waived his right to an evidentiary hearing to establish the amount of restitution due the victims of his crime when he failed to request a hearing. *People v Gahan*, 456 Mich 264, 276, n 17; 571 NW2d 503 (1997). However, his failure to request a hearing to establish the amount of restitution due does not prejudice his right to have the trial court make appropriate findings of fact (regarding his ability to pay) before jailing him for failure to pay the ordered restitution. *Id.*, 277; see also MCL 780.767(4); MSA 28.1287(767)(4).This case is also distinguishable from *People v Ho*, 231 Mich App 178, 192; 585 NW2d 357 (1998), where we held that a defendant waived any argument about his ability to pay restitution when he failed to object at the time of sentencing. *Ho* did not involve a defendant's right to assert an inability to pay restitution before being incarcerated for failing to pay. This statement in *Ho* involves the pre-1996 version of the restitution statute, which required the trial court to consider a defendant's ability to pay in determining the amount of restitution. See historical notes to MCL 769.1a; MSA 28.1073 and MCL 780.766; MSA 28.1287(766). The statute as amended no longer requires the court to consider the defendant's ability to pay when determining the amount of restitution owed.

suspended if defendant paid the restitution.[6] Arguing that he was financially unable to make these payments, defendant sought relief from the jail/restitution sentence under subsections 12 and 14 of the restitution statute, MCL 769.1a; MSA 28.1073. Subsection 12 allows for modification of payment if the defendant is financially unable to meet the restitution obligation.[7] MCL 769.1a(12); MSA 28.1073(12). Subsection 14 provides that a defendant may not be incarcerated for failing to pay restitution unless the trial court finds that he was able to pay and wilfully defaulted on the obligation. MCL 769.1a(14); MSA 28.1073(14).[8]

Defendant requested an evidentiary hearing to establish his inability to pay, and the trial court denied this request. With respect to subsection 12, the court decided that defendant was not entitled to relief upon a finding that defendant had wilfully defaulted. The trial court concluded that defendant's default was wilful because he failed to make even token payments though he had been permitted to work through a continued bail arrangement. With respect to subsection 14, the trial court concluded this provision did

---

[6] Specifically, the trial court sentenced defendant to serve 180 days of jail time in the first year of the sentence, and 90 days each in the second and third years. The 180-day term could be reduced by 90 days if defendant paid $10,500 in restitution. In the second and third years, the entire 90-day term could be suspended if defendant paid $10,500 toward restitution. Defendant is currently released on bond pending appeal.

[7] Before the statute was amended in 1996, this provision, formerly numbered subsection 15, allowed for curtailment or suspension of the obligation upon a showing of manifest hardship. See *People v Grant*, 455 Mich 221, 241-242, n 26; 565 NW2d 389 (1997).

[8] The restitution statute has been amended several times since its enactment in 1985. See historical notes following MCL 769.1a; MSA 28.1073, and MCL 780.766; MSA 28.1287(766), also *Grant*, n 7 *supra*, 455 Mich 241, n 26. The restitution order here was issued October 2, 1997, and is therefore governed by the statute as amended in 1996. Amendments of the statute made effective in 1998 do not have any bearing on this case.

not apply to defendant, because defendant was not being jailed for failing to pay restitution, but instead was being denied a suspension of sentence for failing to satisfy the eligibility. condition. The court made no findings of fact under subsection 14. We conclude that the trial court erred in deciding that subsection 14 did not apply, and we remand for findings of fact under this subsection.

Probationary sentences are governed by MCL 771.1 *et seq.*; MSA 28.1131 *et seq.* One condition of a probationary sentence is that the probationer pay restitution to the victim of the defendant's illegal conduct. MCL 771.3(1)(e); MSA 28.1133(1)(e). The court may require the probationer to be incarcerated in the county jail for a period of twelve months or less. MCL 771.3(2)(a); MSA 28.1133(2)(a).

Restitution orders are governed by MCL 769.1a; MSA 28.1073, a section of Chapter IX (Judgment and Sentence) of the Michigan Code of Criminal Procedure, and also by the Crime Victim's Rights Act, MCL 780.751 *et seq.*; MSA 28.1287(751) *et seq.*[9] If a defendant's offense causes the victim loss of property, the trial court shall issue an order of restitution requiring that the defendant compensate the victim for the loss. MCL 769.1a(2); MSA 28.1073(2).

It is well established that a sentence that exposes an offender to incarceration unless he pays restitution or some other fine violates the Equal Protection Clauses of the federal and state constitutions[10] because it results in unequal punishments for offend-

---

[9] Section 16 of the Crime Victim's Rights Act, MCL 780.766; MSA 28.1287(766), is a near-verbatim copy of MCL 769.1a; MSA 28.1073.

[10] US Const, Am XIV; Const 1963, art 1, § 2.

ers who have and do not have sufficient money. *Tate v Short*, 401 US 395, 397-400; 91 S Ct 668; 28 L Ed 2d 130 (1971); *People v Baker*, 120 Mich App 89, 99; 327 NW2d 403 (1982). In accordance with the right to equal protection, subsection 14 of the restitution statute prohibits incarceration as a consequence for failure to pay unless the failure was wilful. MCL 769.1a(14); MSA 28.1073(14). Defendant argues that the trial court's sentencing order, which rewarded restitution payments with a suspension of jail time, violated these principles. In response, the prosecution argues that the trial court did not impose a jail sentence because defendant failed to pay restitution, but rather allowed for suspension of a jail sentence if defendant met the restitution obligation.

We agree with defendant that this is a distinction without a difference. The sentencing order that allowed defendant reduced jail time if he paid restitution is not materially different from a sentence order that would require defendant to serve additional jail time if he did not pay restitution. Regardless of how the trial court phrases its order, the result is a shorter term for defendant if he can and does pay, a longer term if he cannot and does not pay—a result clearly prohibited by the Equal Protection Clause and the statute. Accordingly, defendant cannot be required to serve the "suspended" portion of the jail sentence absent a finding that he had the ability to pay and was in wilful default. *Baker, supra* at 99-100; MCL 769.1a(14); MSA 28.1073(14).

The restitution statute provides the necessary safeguards to avoid an equal protection violation when a defendant is required to serve jail time after failing to pay restitution. Subsection 14 provides:

> Notwithstanding any other provision of this section, a defendant shall not be imprisoned, jailed, or incarcerated for a violation of probation or parole or otherwise for failure to pay restitution as ordered under this section unless the court or parole board determines that the defendant has the resources to pay the ordered restitution and has not made a good faith effort to do so. [MCL 769.1a(14); MSA 28.1073(14).]

Additionally, subsection 12 provides:

> A defendant who is required to pay restitution and who is not in willful default of the payment of the restitution may at any time petition the sentencing judge or his or her successor to modify the method of payment. If the court determines that payment under the order will impose a manifest hardship on the defendant or his or her immediate family, the court may modify the method of payment. [MCL 769.1a(12); MSA 28.1073(12).]

In *People v Gahan*, 456 Mich 264, 277; 571 NW2d 503 (1997), our Supreme Court held that these statutory safeguards satisfied the right to equal protection:

> We note that the Crime Victim's Rights Act[11] contains additional procedural safeguards that ensure that defendants are afforded due process. MCL 780.766(14); MSA 28.1287(766)(14) precludes a defendant from being incarcerated for failure to pay the restitution ordered, absent the court or the Parole Board determining that the defendant has the resources to pay, but has not made a good-faith effort to do so. MCL 780.766(12); MSA 28.1287(766)(12) authorizes the court to modify the method of payment if the court determines that payment under the order will impose a manifest hardship on the defendant or his immediate family. Consequently, the Crime Victim's Rights Act not only

---

[11] Subsections 12 and 14 contain exactly the same language in both the restitution statute, MCL 769.1a; MSA 28.1073, and the Crime Victim's Rights Act, MCL 780.766; MSA 28.1287(766).

complies with due process by affording defendants an evidentiary hearing to establish the proper amount of restitution, it also contains additional safeguards that prevent deprivation of liberty when criminal defendants are actually unable to compensate their victims.

Accordingly, had the trial court complied with the statute in requiring defendant to serve the additional jail time, defendant's equal protection rights would not have been violated.

Here, defendant sought relief from the restitution order under both subsections 12 and 14 of the restitution statute.[12] As discussed above, the trial court erroneously decided that subsection 14 did not apply, and made no findings of fact with respect to subsection 14. Regarding defendant's claim under subsection 12, the trial court declined to hold an evidentiary hearing, but found that defendant could not make the requisite showing for modification of restitution payments. The trial court did not satisfy the statutory requirements for either of these subsections. Different quanta of proof are required under these subsections: subsection 12 requires defendant to show "manifest hardship" to himself or his family under the existing restitution payment plan, while subsection 14 requires that the court find that defendant's default was wilful and that he was able to pay restitution. We therefore remand to the trial court to make appropriate findings of fact under subsection 14 and to decide whether defendant can be required to serve the extra 270 days of jail time for failure to pay. Because the statute does not specifically entitle defendant to an

---

[12] On appeal, defendant does not raise any issue with respect to the trial court's ruling on subsection 12.

evidentiary hearing, the trial court should decide whether a hearing is necessary, or whether the record already contains sufficient facts for this determination. Because defendant has not raised any appeal issues pertaining to subsection 12, we do not remand for findings of fact under that subsection.

Defendant's convictions are affirmed. We remand for further proceedings regarding the sentence in accordance with our opinion. We do not retain jurisdiction.