# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

GHAZI SALAMEH MARJI,

      Defendant-Appellant.

UNPUBLISHED
March 14, 2017

No. 330193
Oakland Circuit Court
LC No. 2009-229091-FH

---

Before: GLEICHER, P.J., and MURRAY and FORT HOOD, JJ.

PER CURIAM.

The trial court revoked Ghazi Marji's probation and sentenced him to a two-year term of imprisonment based on Marji's failure to fully pay the restitution he owed. Before imposing this sentence, the trial court failed to consider Marji's current employment status, earning ability, financial resources, and the willfulness of his failure to remit the total amount of restitution awarded. The record does not substantiate that Marji had the ability to pay the restitution or that he had willfully refused to pay it, and the trial court never made any reviewable findings one way or another. We reverse and remand for proceedings consistent with this opinion.

I

In May 2010, Marji pleaded no contest to felonious assault. The court ordered him to pay restitution in the amount of $22,774.42 plus various court costs and fees, and sentenced him to a one-year jail term followed by two years' probation. At that time, Marji was 65 years old.

Marji was released early from jail for good conduct and in March 2011 requested that the court modify one term of his probation—home confinement—so that he could attempt to resume employment as a trucker. The Northern Steel Transport Company submitted a letter to the court stating that Marji "had been an owner operator" for the company "from 2001 to 2010 as a Commercial Motor Vehicle driver," and that the company had "no issues reviewing [Marji's] record for the possibility of signing another lease." The trial court lifted Marji's home confinement on condition that he inform his probation officer, Michael Tilley, of any occupational departures and returns.

Three months later, a new probation officer, Gregory Leighty, advised the court that Marji was behind on his restitution; Leighty's report stated the amount of Marji's arrearage as $3,568. The report further indicated, "The defendant reported that he is retired and that his

-1-

income is about $1,000 per month. He reported that due to his rent, utilities, and initial incarceration he has found himself behind. Defendant stressed that he is now attempting to work again so that he can begin paying more consistently." The trial court found Marji guilty of violating his probation and extended his probation to June 28, 2015.

In December 2011, Leighty advised the court that Marji was still in arrears to the tune of $12,222, a significant increase from the $3,568 in arrearage claimed just six months earlier. The report further provided: "The defendant's last payment was $150.00 made on 12/7/11. The defendant reports employment and indicates he is striving to work full-time when able. He maintains payments will be made consistently."

In July 2012, a different probation officer (Patrick Knowles) reported that Marji was $20,238.52 in arrears, despite that Marji "has made $150 per month payments since [violation of his probation] on 8/29/11." A year and a half later, yet another probation agent reported that Marji was $16,953.05 in arrears, but continued to make "payments in the amount of $150.00 per month."

In May 2015, a probation violation report filed with the court declared that Marji's restitution balance stood at $14,801.12. Much of the information contained in the report was drawn directly from Marji's 2010 presentence investigation report. The 2015 report provided in relevant part:

> The defendant has denied being employed since his sentence date of 6/28/2010. The defendant claims to live solely on $1,100.00 Social Security per month. However, it should be noted the defendant was owner of Margie [sic] Trucking and that he bought his wife out of the business in a divorce settlement all around the time of the sentence in this case indicating that this business had value. It is also possible the defendant has been working but this is not verifiable as he denies same.[1]
>
> * * *
>
> As previously stated the defendant was owner of Margie [sic] Trucking prior to the within offense and it was indicated in the presentence investigation that the defendant bought out his wife's interest in the business prior to their divorce which was a result of the defendant's involvement in the within offense. This indicates value to this business and it is unknown at this time what happened to this business. Wether [sic] it is being operated by other people, the defendant or was sold for some value. When the defendant was first placed on probation he indicated he was unemployed and living on Social Security because he retired due to his arrest on the within offense.

---

[1] Of course, Marji's employment, if any, *was* verifiable through a subpoena to the Internal Revenue Service or to Marji's bank.

Marji admitted at the probation violation hearing that he still owed some amount of restitution; according to his appointed counsel, the arrearage was $14,201.12. Referencing the probation violation report Marji's lawyer stated:

> Your Honor, the tone of the report herein suggests that my client has additional income. He asserts he does not have additional income but for his social security. I don't see that probation has any verification or independent documentation that supports their assertion that he's making other - - other money from some other source. And he stands by the fact that he is paying everything he can.
>
> He doesn't deny that he still has a balance, but he asserts that there is no other pool of monies that he can take from to pay additionally.

The prosecutor responded:

> Well, your Honor, the People's concern, aside from the fact, of course, that the victim sustained horrific injuries that required significant medical treatment, but the defendant, at the time, was back when this occurred, had a trucking business, and apparently - - *I don't know if he's dissolved that trucking business or sold off the assets of that trucking business*, but certainly those assets have value. And if, in fact, he did dissolve and sell off those assets, then those monies could have been put towards these medical bills.
>
> So, for whatever reason the defendant chose not to do that. Either the business still exists and someone else is running it for him, in which case there are monies, or, he has sold that business. But, *certainly the selling of that business would have provided some monetary benefit to the defendant*, and so, you know, the defendant has chosen not to pay these monies. It's very easy, as the court is aware, to conceal assets.
>
> The People would ask that the court adopt the recommendation and make the remaining restitution part of parole. [Emphasis added.]

Aside from the prosecutor's speculations about a "trucking business" and Marji's assets, neither the prosecutor nor the probation department presented any testimony or evidence.

The court questioned Marji about his "trucking business." Marji claimed that he had an accident in Toledo, Ohio and "smash[ed]" the truck. He stated that he had rented the trailer "from the owner." Marji then described the accident; the transcript of this interchange is virtually undecipherable due either to Marji's difficulties with the English language or the quality of the recording. The court asked whether the truck was insured, and Marji responded that it was not; under further questioning he clarified: "I'm saying it wasn't insured by me, but it was insured by the company." The trial court disbelieved this testimony. Marji suggested that the court call the trucking company to confirm his version; the court retorted: "I'm not gonna do anything, Sir. I don't have to prove anything, you have to prove it to me."

Marji claimed that his ownership of the truck "was long time ago."  This issue, too, remained unresolved.  The court then became frustrated, admonishing Marji, "You told me you had a trucking business." The following colloquy ensued:

>*Mr. Marji*:  Not a trucking business, I have a truck.  I don't have a trucking business.

>*The Court*:  Well, I beg to differ with you Sir, because - -

>*Mr. Marji:*  No.

>*The Court*:  - - you - - don't interrupt me, Sir.

>*Mr. Marji*:  No.

>*The Court*:  Do not interrupt me.  This is what you said with respect to your employment back then, that you were the sole owner of Marji Trucking.  You told the - - the agent that the business used to be in your wife's name but you bought her out and that you couldn't work since this offense because you couldn't travel out of state.  And you were receiving social security income at that time.  That's what you indicated, Sir.

>*Mr. Marji*:  That's true.  I'm not - - I'm not saying one word, your Honor, but - -

>*The Court*:  Well then I don't understand how you could own the truck and not have it insured, that somebody else is insuring it for you.  They can't insure an interest that they don't have in the property.  It's not - - it's a fraud if you insure an interest in property that you don't own.  If you own the truck you have to have had the insurance on it.  Now, maybe they reimbursed you the cost for the insurance, I don't know, but they could not have insured your truck.

>*Mr. Marji*:  Your Honor, they insure my truck and the company - - (undecipherable) - - there is a driver for that company - - (undecipherable) - - 20, 25 guys.  They own their - - their truck.  Some people, they own just the head, some people, they own the head and the trailer.

>*The Court*:  Well, you can't change your stories all the time, Mr. Marji, when it suits your . . . All right, thank you.

>It is the sentence of this court that your probation be revoked.  I am sentencing you to serve (2) years to five - - fifteen (15) years with the Michigan

Department of Corrections with three hundred and sixty-five (365) days credit[.][2]

Marji's prison term began on June 22, 2015, and in December 2015, this Court granted his delayed application to appeal. *People v Marji*, unpublished order of the Court of Appeals, entered December 21, 2015 (Docket No. 330193).[3] According to the Offender Tracking Information System (OTIS), Marji was paroled in June 2016; his parole supervision discharge date is June 21, 2017.

II

Preliminarily we observe that despite Marji's release from prison, his appellate argument is not moot. "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey*, 261 Mich App 506, 510; 681 NW2d 661 (2004). "Parole is a conditional release; a paroled prisoner is technically still in the custody of the Department of Corrections, which is executing the sentence imposed by the court." *People v Raihala*, 199 Mich App 577, 579; 502 NW2d 755 (1993). "[U]nless and until parole is successfully completed, the prisoner is deemed to be still serving out the sentence imposed upon him by the court." *Id*. at 579-580 (quotation marks and citation omitted). Furthermore, MCL 791.238 provides in relevant part:

> (1) Each prisoner on parole shall remain in the legal custody and under the control of the department. The deputy director of the bureau of field services, upon a showing of probable violation of parole, may issue a warrant for the return of any paroled prisoner. Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.
>
> (2) A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and is liable, when arrested, to serve out

---

[2] Although the transcript indicates that the trial court intended the upper end of Marji's sentence to be 15 years, the judgment of sentence states that his sentence is two to five years' imprisonment. Marji's brief on appeal indicates that he was sentenced to 2 to 15 years' imprisonment. Both OTIS and the prosecution's brief on appeal indicate that Marji's sentence was two to five years' imprisonment. On remand, the trial court is directed to clarify Marji's sentence.

[3] Appellate counsel was appointed for Mr. Marji on July 6, 2015, less than a month after his probation was revoked. Counsel filed a delayed application for leave to appeal on November 9, 2015. This Court granted the application approximately one month after the transcripts were received. Despite our decision to grant leave and to endorse Marji's counsel for argument, no one appeared on his behalf. We find this troubling. Oral argument frequently benefits this Court in resolving factual and legal issues. Particularly when leave has been granted, we urge counsel to attend.

the unexpired portion of his or her maximum imprisonment. The time from the date of the declared violation to the date of the prisoner's availability for return to an institution shall not be counted as time served. The warrant of the deputy director of the bureau of field services is a sufficient warrant authorizing all officers named in the warrant to detain the paroled prisoner in any jail of the state until his or her return to the state penal institution.

Additionally, MCL 791.240a provides in relevant part:

> (1) After a prisoner is released on parole, the prisoner's parole order is subject to revocation at the discretion of the parole board for cause as provided in this section.
>
> * * *
>
> (11) A parolee who is ordered to make restitution under the William Van Regenmorter crime victim's rights act, . . . MCL 780.751 to 780.834, or the code of criminal procedure, . . . MCL 760.1 to 777.69, or to pay an assessment ordered under . . . MCL 780.905, as a condition of parole may have his or her parole revoked by the parole board if the parolee fails to comply with the order and if the parolee has not made a good faith effort to comply with the order. In determining whether to revoke parole, the parole board shall consider the parolee's employment status, earning ability, and financial resources, the willfulness of the parolee's failure to comply with the order, and any other special circumstances that may have a bearing on the parolee's ability to comply with the order.

Thus, a parolee remains in the custody of the Department of Corrections and is subject to being returned to prison at the discretion of the Department of Corrections upon a violation of parole, which may be predicated on the failure to pay restitution. MCL 791.238(1)-(2); MCL 791.240a(1) and (11); *Raihala*, 199 Mich App at 579-580. Here, the trial court made restitution a condition of Marji's parole; therefore, he remains subject to imprisonment and his appellate argument is not moot. See *Cathey*, 261 Mich App at 510; see also *People v Parker*, 267 Mich App 319, 329; 704 NW2d 734 (2005) ("We note that [defendant] has served his minimum sentence and was paroled on March 9, 2004. However, we conclude that this appeal is not moot because [defendant] is scheduled to remain on parole until March 15, 2006, which imposes some continuing limitations on his freedom. Had [defendant] received an intermediate sanction, as he contends he should have, he might not be subject to any limitations at all.").

III

A court may not revoke a defendant's probation and send him or her to prison absent a finding that he or she has an ability to pay restitution and is in willful default of his obligation. *People v Collins*, 239 Mich App 125, 136; 607 NW2d 760 (1999). This holding flows from both the language of the relevant statutes and binding authority issued by the United States Supreme Court. Before imprisoning a defendant for failure to pay restitution, a court must consider whether the defendant has the present ability to pay by examining his employment status, earning capacity, and financial resources.

MCL 780.766(11) provides:

> If the defendant is placed on probation or paroled or the court imposes a conditional sentence as provided in . . . MCL 769.3, any restitution ordered under this section shall be a condition of that probation, parole, or sentence. The court may revoke probation or impose imprisonment under the conditional sentence and the parole board may revoke parole if the defendant fails to comply with the order and if the defendant has not made a good faith effort to comply with the order. *In determining whether to revoke probation or parole or impose imprisonment, the court or parole board shall consider the defendant's employment status, earning ability, and financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.* [Emphasis added.]

See also MCL 769.1a(11). MCL 769.1a(14) and MCL 780.766(14), which are identical, provide:

> Notwithstanding any other provision of this section, a defendant shall not be imprisoned, jailed, or incarcerated for a violation of probation or parole or otherwise for failure to pay restitution as ordered under this section *unless the court or parole board determines that the defendant has the resources to pay the ordered restitution and has not made a good faith effort to do so.* [Emphasis added.]

In *Bearden v Georgia*, 461 US 660, 672-673; 103 S Ct 2064; 76 L Ed 2d 221 (1983), the United States Supreme Court held

> that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

And in *People v Jackson*, 483 Mich 271, 275; 769 NW2d 630 (2009), our Supreme Court declared that when determining a defendant's ability to pay, a judge "must consider whether the defendant remains indigent and whether repayment would cause manifest hardship."

This statutory and constitutional framework dictates that a court "consider" certain evidentiary questions involving a probationer's economic situation, and refrain from sending a probationer to prison unless he or she has not made "a good faith effort" to comply with a restitution order, despite having the resources to do so.

A court "considers" a question "by devoting some element of thoughtful deliberation to it." *State v Jones*, 124 Ore App 489, 493; 863 P2d 480 (1993). Here, the court expressed its disbelief of everything Marji tried to say and focused on Marji's preconviction employment as a truck driver. But disbelief is not a finding, and the record is devoid of any evidence that would permit the trial court to actually determine Marji's employment status, earning ability, and financial resources. The prosecutor presented only the information gathered in 2010, when Marji was originally sentenced, and based on that information hypothesized that assets might yet be remaining from the time of Marji's 2010 divorce. But neither the prosecutor nor the probation department brought forward any actual facts or evidence regarding Marji's 2015 assets or his ability to pay.

Moreover, in 2015, Marji was almost 70 years old and his truck no longer existed. The 2011 letter from the Northern Steel Transport Company relied on by the court offered Marji "the possibility of signing another lease;" no evidence substantiated that the offer had turned into real wages. Instead of focusing on Marji's *current* ability to pay as statutorily required, the court simply rejected whatever Marji said. That the prosecution brought forward no evidence whatsoever made the court's task difficult, to be sure. This evidentiary void did not relieve the court of its obligation to consider the statutory criteria and to indicate, on the record, what it had determined regarding Marji's "employment status, earning ability, and financial resources," as well as the "willfulness" of his failure to pay the balance of the owed restitution.[4]

We reject the prosecutor's argument that the necessary findings were "implicit" in the court's statements, as we decline to read the court's mind in light of the requirement that the record reflect a considered judgment. Because the court made no findings and instead expressed only disbelief or frustration with its *lack* of knowledge, it is impossible to determine whether the court actually considered Marji's ability to pay, or instead relied solely on the stale information provided in the PSIR. As no evidence presented in 2015 suggested that Marji had any resources available to him to pay the entire balance of the restitution award, we cannot agree that the court implicitly found that such assets existed.

We reverse. We remand for a new probation violation hearing at which the trial court must make the findings of fact required by MCL 769.1a(14) and MCL 780.766(14). On remand,

---

[4] That Marji had, for the most part, steadily paid something toward the debt tends to refute that he had "willfully" failed to pay. In fact, Marji had made a substantial dent in the restitution he owed, paying at least $8,000 of the total, and in a fairly consistent fashion. Given Marji's payments over the years, it appears that he was making a reasonable effort to pay, particularly given that if Marji's income was limited to $1,100.00 in social security benefits, he was paying almost 14% of his monthly income in restitution.

the trial court should also correct the judgment of sentence to accurately reflect its intended sentence. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray