# Court of Appeals, State of Michigan

## ORDER

People of MI v Golden G. Higgwe

Docket No.    356610

LC No.        14-001096-FH

Amy Ronayne Krause
Presiding Judge

Christopher M. Murray

Colleen A. O'Brien
Judges

The motion for reconsideration is GRANTED, and this Court's opinion issued April 14, 2022 is hereby VACATED. A new opinion is attached to this order.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

June 23, 2022
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GOLDEN G. HIGGWE,

Defendant-Appellant.

UNPUBLISHED
June 23, 2022

No. 356610
Ingham Circuit Court
LC No. 14-001096-FH

## ON RECONSIDERATION

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's revocation of his probation on the basis of his failure to pay restitution. Defendant pleaded guilty to five counts of Medicaid fraud, MCL 400.607(1) (false claim); 13 counts of healthcare fraud, MCL 752.1003(1); and one count of unauthorized practice of medicine, MCL 333.16294. Defendant was originally sentenced as a second habitual offender, MCL 769.10, to serve 365 days in jail and five years of probation; he was ordered to pay restitution and other court costs as a condition of his probation. Defendant subsequently pleaded guilty to violating his probation by failing to pay restitution, and the trial court accepted his plea, revoked probation, and sentenced defendant to serve 23 to 48 months in prison. On appeal, defendant argues that he did not knowingly and intelligently waive his right to counsel, and that the trial court failed to properly assess whether payment of restitution would cause defendant manifest hardship and whether defendant willfully failed to pay his restitution before imposing this sentence. We remand the matter for the trial court to make specific findings under MCR 6.425(D)(3).

## I. RELEVANT FACTS

---

[1] *People v Higgwe*, unpublished order of the Court of Appeals, entered May 5, 2021 (Docket No. 356610).

As a condition of his probation, defendant was ordered in 2015 to pay $13,049.80 in restitution and $4,170.00 in court fees and costs. Defendant and his codefendant were jointly and severally liable for the restitution payment.

In 2019, defendant's probation officer filed a request and summons for probation violation, alleging that defendant violated the terms of his probation by failing to make any payments toward his restitution and making no other payments other than a $1,000 bond distribution payment in 2015. At defendant's first probation violation hearing in October 2019, the trial court informed defendant of his rights, including his right to appointed counsel, and stated that because defendant "need[ed] an attorney," the trial court would appoint defendant an attorney for the next hearing.

At defendant's second probation violation hearing in early November 2019, the trial court asked defendant whether he had met with his court-appointed attorney, to which defendant said he had not because no one came to meet with him. In response, the trial court stated, "So you still wish to have an attorney, I assume, right?" Defendant replied, "I don't think so. This is your court. I don't think I need any, sir." Defendant's probation officer informed the trial court that defendant's 2015 presentence investigation report (PSIR) stated that during an interview to prepare defendant's PSIR, defendant stated he had no intention of paying restitution. The trial court stated it was going to give defendant "another chance," and again informed him of his rights, including his right to an attorney. The trial court then asked defendant if he understood his rights, to which defendant responded yes. Defendant pleaded guilty to failing to pay his restitution, and the trial court found that his plea was understanding and voluntarily made.

At a hearing in late November 2019, defendant again was not represented by counsel, and the trial court again asked defendant if he wished to have an attorney, to which defendant responded, "No, Your Honor." Nevertheless, the trial court adjourned the hearing so defendant could be assigned appointed counsel. Defendant was represented at a hearing in December 2019. At this hearing, defendant's attorney informed the trial court that defendant was having financial difficulties but was mailing $20 per month in envelopes provided by the Department of Corrections (DOC). Defendant wrote the word "restitution" on these envelopes and thought these payments were paying off his restitution. The trial court released defendant to see if he could make "some substantial efforts towards paying or not. That's why I'm adjourning sentencing or he has to go to prison. It's that simple."

At defendant's sentencing hearing in June 2020, defendant informed the trial court that he did not make payments toward his restitution because he thought his codefendant had paid the restitution. Defendant received a receipt from the courthouse cashier that he believed indicated his balance was zero dollars. Defendant stated that he intended on paying his restitution, but after receiving the receipt from the court cashier, and learning from his lawyer that he did not have to send any money, he did not pay his restitution. The trial court clarified that a "zero balance" on the receipt meant that defendant had made zero payments. Further, defendant's attorney stated that he informed defendant that he still owed money, and also if defendant did not pay, he might go to prison, but that defendant misunderstood this. Additionally, defendant's attorney stated defendant could not afford to pay his restitution of more than $13,000 when he was earning only $800 per month, taking into account his child support obligation and living expenses.

The trial court found that because defendant failed to make any payments when he was employed, defendant was "able to make payments in this matter" but chose not to. Specifically, the trial court stated the following:

> So it's been five years. He's had various employments. So the Court finds he's been employed throughout this time period. And whenever we had show causes he was employed, and he has never, ever made one payment. The Court finds that he was qualified and was able to make payments in this matter and simply was following through on his initial statement at the time of the conclusion of the case; that he had no plans on paying any restitution and would rather go to jail.

Defendant subsequently filed a motion for plea withdrawal, arguing that he did not knowingly or intelligently waive his right to counsel, and that the trial court failed to properly assess defendant's ability to pay before sentencing him. The trial court denied defendant's motion.

## II. ANALYSIS

## A. WAIVER OF COUNSEL

Defendant argues that his waiver of his right to counsel was not knowingly and intelligently made, and as a result, he should be permitted to withdraw his probation violation plea.

"When assessing the validity of a defendant's waiver of the right to counsel, we review de novo the entire record to determine whether the trial court's factual findings regarding the waiver were clearly erroneous." *People v Willing*, 267 Mich App 208, 218; 704 NW2d 472 (2005). This Court reviews de novo a ruling involving an interpretation of the law or application of a constitutional standard to uncontested facts. *Id*. at 219. "A trial court's decision on a motion to withdraw a plea is reviewed for an abuse of discretion." *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012).

Defendants have a constitutional right to proceed *in propria persona* in any criminal proceeding, or to be represented by counsel. *People v Belanger*, 227 Mich App 637, 641; 576 NW2d 703 (1998). This right extends to probation revocation hearings. *Id*. However, defendants in probation revocation hearings do not have the same constitutional rights guaranteed in a criminal trial. *Id*. at 643. "Probation revocation proceedings are summary and informal and are not subject to the rules of evidence or of pleadings applicable in criminal trials." *Id*. This is because probation revocation hearings are not a stage of criminal prosecution and do not require a formal hearing "if the probationer admits at a preliminary hearing the alleged violations, and those violations are found by the court to be reasonable grounds for revoking probating under the law." *People v Rial*, 399 Mich 431, 436; 249 NW2d 114 (1976).

MCR 6.445 provides, in relevant part, procedures required at a probation revocation hearing:

> (B) Arraignment on the Charge. At the arraignment on the alleged probation violation, the court must

* * *

(2) advise the probationer that

(a) the probationer has a right to contest the charge at a hearing, and

(b) the probationer is entitled to a lawyer's assistance at the hearing and at all subsequent court proceedings, and that the court will appoint a lawyer at public expense if the probationer wants one and is financially unable to retain one,

(3) if requested and appropriate, refer the matter to the local indigent criminal defense system's appointing authority for appointment of a lawyer,

* * *

(D) Continuing Duty to Advise of Right to Assistance of Lawyer. Even though a probationer charged with probation violation has waived the assistance of a lawyer, at each subsequent proceeding the court must comply with the advice and waiver procedure in MCR 6.005(E).

* * *

(F) Pleas of Guilty. The probationer may, at the arraignment or afterward, plead guilty to the violation. Before accepting a guilty plea, the court, speaking directly to the probationer and receiving the probationer's response, must

(1) advise the probationer that by pleading guilty the probationer is giving up the right to a contested hearing and, if the probationer is proceeding without legal representation, the right to a lawyer's assistance as set forth in subrule (B)(2)(b).

Pursuant to MCR 6.445, "due process is satisfied in a probation revocation proceeding if a trial court advises a defendant of his right to counsel and the appointment of counsel, if he is indigent, and determines if there is a knowing and intelligent waiver of that right." *Belanger*, 227 Mich App at 647. "Factors to be considered when deciding whether defendant had made a knowing waiver of his right to counsel are defendant's age, education, prior criminal experience, mental state, financial condition, and the various factors, pressures or inducements which led him to admit the allegations against him without the assistance of counsel." *Id*. at 646, quoting *People v Kitley*, 59 Mich App 71, 76; 228 NW2d 834 (1975) (quotation marks omitted).

The trial court complied with the requirements of MCR 6.445 at the plea and sentencing proceedings. At defendant's first probation revocation hearing, the trial court asked defendant if he was aware of the charges against him, informed defendant that he had a right to an appointed attorney if he could not afford one, and informed defendant that he had a right to a contested hearing, which complied with MCR 6.445(B)(2). Although defendant did not state whether he wanted an attorney, the trial court determined that defendant needed an attorney and informed defendant that it would assign him an attorney for the next hearing. At defendant's second probation revocation hearing, defendant's attorney did not appear, and the trial court asked

-4-

defendant, "So you still wish to have an attorney, I assume, right?" Defendant respondent, "I don't think so. This is your court. I don't think I need any, sir." The trial court then proceeded to ask defendant if he was going to admit to the probation violation or if he wished to have a hearing on his failure to pay, to which defendant replied, "Yes, sir. I have to make payments because I have two jobs, not one job. I have two jobs." The trial court's actions complied with MCR 6.445(B) and defendant's waiver was knowingly and intelligently made. See *Belanger*, 227 Mich App at 648. Even though defendant's responses may have indicated that he was initially confused, as he argues on appeal, the trial court informed defendant of his rights a second time, confirmed again that defendant did not want an attorney, and asked defendant if he understood this, to which defendant responded "Yes, sir."

In addition to complying with the procedural requirements of MCR 6.445, the factors cited in *Belanger* demonstrate that defendant's waiver was knowingly and intelligently made. Defendant was in his 60s at the time of the June 17, 2020 sentencing hearing; he was highly educated and had a doctoral degree in medicine; and he had a criminal history involving one count of felony mail fraud from 2003 and 19 counts of medical fraud from 2015. These factors indicate that defendant had a high degree of familiarity with the criminal justice system. See *Belanger*, 227 Mich App at 648. Further, there were no indications in the record that defendant was pressured or induced to admit to these charges without the assistance of counsel, and the trial court even double-checked to ensure defendant wanted to proceed with his plea without the assistance of counsel. See *id*. Therefore, the trial court properly concluded that defendant's waiver was knowingly and intelligently made, and the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea.

## B. FAILURE TO PAY RESTITUTION

Defendant argues that the trial court failed to properly determine whether he was able to pay his restitution, and as a result, improperly sentenced him to prison for failure to pay his restitution.[2]

This Court reviews de novo questions of constitutional law, *People v Jackson*, 483 Mich 271, 277; 769 NW2d 630 (2009), and reviews findings of fact for clear error, *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

"[A] sentence that exposes an offender to incarceration unless he pays restitution or some other fine violates the Equal Protection Clauses of the federal and state constitutions because it results in unequal punishments for offenders who have and do not have sufficient money." *People*

---

[2] Although defendant has apparently been released from prison and is on supervised parole, his appellate arguments are not moot. A paroled prisoner is still technically in the custody of the DOC, which constitutes execution of a sentence imposed by a court. See *People v Warren*, 505 Mich 196, 202 n 1; 949 NW2d 125 (2020) and *People v Raihala*, 199 Mich App 577, 579; 502 NW2d 755 (1993).

*v Collins*, 239 Mich App 125, 135-136; 607 NW2d 760 (1999), citing US Const, Am XIV; Const 1963, art 1, § 2. As a result, a defendant cannot be incarcerated for failure to pay restitution unless the failure to pay was willful. *Id.*, citing MCL 769.1a(14). MCL 769.1a(14) states:

> Notwithstanding any other provision of this section, a defendant shall not be imprisoned, jailed, or incarcerated for a violation of probation or parole or otherwise for failure to pay restitution as ordered under this section unless the court or parole board determines that the defendant has the resources to pay the ordered restitution and has not made a good faith effort to do so.

Similarly, MCR 6.425(D) states, in relevant part:

> (3) Incarceration for Nonpayment.

> (a) The court shall not sentence a defendant to a term of incarceration, nor revoke probation, for failure to comply with an order to pay money unless the court finds, on the record, that the defendant is able to comply with the order without manifest hardship and that the defendant has not made a good-faith effort to comply with the order.

> \* \* \*

> (c) Determining Manifest Hardship. The court shall consider the following criteria in determining manifest hardship:

> (*i*) Defendant's employment status and history.

> (*ii*) Defendant's employability and earning ability.

> (*iii*) The willfulness of the defendant's failure to pay.

> (*iv*) Defendant's financial resources.

> (*v*) Defendant's basic living expenses including but not limited to food, shelter, clothing, necessary medical expenses, or child support.

> (*vi*) Any other special circumstances that may have bearing on the defendant's ability to pay.[3]

---

[3] See also MCL 769.1a(11), which states, in relevant part:

> In determining whether to revoke probation or parole or impose imprisonment, the court or parole board shall consider the defendant's employment status, earning ability, and financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay.

An ability-to-pay assessment is necessary when the imposition of court fines or costs "is enforced and the defendant contests his ability to pay." *Jackson*, 483 Mich at 298. Further, determining an individual's "indigency is an individualized assessment," that is determined "at the time of enforcement" of payment. *Id*. at 296. A "defendant bears a heavy burden of establishing his extraordinary financial circumstances." *Id*.

Although we sympathize with the trial court's rationale for holding that defendant failed to comply with the restitution order, in doing so the court failed to analyze on the record the factors that must be analyzed under MCR 6.425(D)(3). That rule requires that the court consider at least six factors in determining whether defendant could comply with the restitution order absent manifest hardship. See MCR 6.425(D)(3)(*i*)-(*vi*) (repeated use of "shall" in describing a trial court's duty to determine manifest hardship) and *Lakeshore Group v Dep't of Environmental Quality*, 507 Mich 52, 64; 968 NW2d 251 (2021) ("The term 'shall' indicates that conduct is mandatory"). Although the court considered the willfulness of defendant's failure to pay, and employment history (at least generally), it did not discuss or address defendant's earning ability, financial resources, basic living expenses or other relevant factors, despite there being some evidence relative to those factors in the record. It could well be that the court did consider this evidence and these factors, but it did not do so on the record, and thus failed to comply with the court rule, which also hampers our review of its decision.[4] Thus, we remand for the trial court to address the evidence that is relevant under the factors contained in MCR 6.425(D)(3).

The matter is remanded for the trial court to make specific findings under MCR 6.425(D)(3). We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[4] The trial court properly considered defendant's statement from five years earlier that he would not pay the restitution ordered, and that defendant had been employed at the time of each of the several probation violation hearings, and had been making minimal payments towards his DOC payments. But, despite recognizing these relevant facts, the court did not tie them to the criteria within MCR 6.425(D)(3).